DURIE TANGRI LLP
JOSHUA H. LERNER (SBN 220755)
jlerner@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
ERIC G. MESSINGER (*Pro Hac Vice*)
emessinger@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:     415-362-6666
Facsimile:      415-236-6300

Attorneys for Defendant
TWITTER, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TWiT, LLC, a Delaware limited liability company, LEO LAPORTE,<br><br>                              Plaintiffs,<br><br>        v.<br><br>TWITTER, INC., a Delaware corporation,<br><br>                              Defendant. | Case No. 3:18-cv-00341-JSC<br><br>**DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     April 26, 2018<br>Time:    9:00 a.m.<br>Ctrm:    F, 15th Floor<br>Judge:  Honorable Jacqueline Scott Corley |

1

<u>**NOTICE OF MOTION AND MOTION**</u>

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on April 26, 2018 at 9:00 a.m., or as soon thereafter as the

4

matter may be heard in Courtroom F of the above-entitled court, located at 450 Golden Gate Avenue, San

5

Francisco, CA  94102, the undersigned Defendant Twitter, Inc. ("Twitter"), will and hereby does move

6

for an order dismissing Plaintiffs TWiT, LLC ("TWiT") and Leo Laporte's (collectively "Plaintiffs")

7

Complaint which was filed on January 16, 2018.

8

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in

9

support thereof, pleadings on file in this matter, the arguments of counsel, and all other material which

10

may properly come before the Court at or before the hearing on this Motion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................1

II.    FACTS ................................................................................................................2

     A.     TWiT and Twitter launched within the same period, and were each aware of the other, but no coexistence agreement was mentioned, let alone formed, on the March 2007 TWiT episode. .................................................................................2

     B.     Laporte continued to talk about Twitter after the 2007 episode but never took any action, even after Twitter put the world on notice of its plans. ...............................4

     C.     Laporte's and Williams' exchange about incorrect reporting on a TV show did not confirm any contract. ...............................................................................................4

     D.     Laporte was well aware of audio and video on Twitter and never alleged breach of any agreement or infringement. ..............................................................................5

     E.     Plaintiffs filed suit without identifying an alleged "breach." ...............................6

III.   LEGAL STANDARD ..........................................................................................6

IV.    ARGUMENT .......................................................................................................6

     A.     Plaintiffs fail to plead a contract—oral, written, implied, or by estoppel—and even if they had, the Contract Claims would be untimely. .............................................7

          1.     The netcast exchange between Laporte and Williams did not create an oral coexistence contract. ...............................................................................8

               a.     There was no consent.................................................................8

               b.     There were not sufficiently definite contractual terms. .............9

               c.     There was no consideration. ......................................................9

               d.     The alleged oral contract runs afoul of the statute of frauds.......9

          2.     Larporte's Letter to Williams about false reports of a TV show, and Williams' Email in response, did not form or "confirm" a contract....................10

               a.     There was no offer or acceptance. ...........................................11

               b.     There was no consideration. ....................................................11

               c.     Plaintiffs' allegations for the other elements of a breach of written contract claim are also deficient. .............................................12

          3.     There was no "implied" contract between the parties. ...........................12

          4.     Promissory estoppel is inapplicable and inadequately pleaded. .............13

               a.     Plaintiffs fail to identify any clear and unambiguous promise. .................14

ii

b.      Plaintiffs also fail to plead reasonable reliance on any promise. ...............15

5.      The statute of limitations has run for every Contract Claim. .................15

        a.      The Complaint was filed outside of the applicable limitations
                period. ......................................................................................15

        b.      The delay in filing suit cannot be excused under the discovery rule,
                since Plaintiffs used Twitter's video-posting features themselves
                more than four years before filing suit. ........................................16

B.      Plaintiffs fail to plead a fraud claim, and even if they had, it would be time barred. ........16

        1.      The Fraud Claims are not pleaded with particularity. ..............................16

                a.      The false-promise claim is not pleaded with particularity. ........................17

                b.      The intentional-misrepresentation claim is not pleaded with
                        particularity. ...................................................................18

                c.      The negligent-misrepresentation claim is not pleaded with
                        particularity. ...................................................................18

        2.      The statute of limitations has run as to every Fraud Claim. .................19

C.      Plaintiffs' Tort Claims are subject to dismissal. ..............................................19

        1.      The Tort Claims are simply repackaged Contract Claims, and fail on the
                same basis. ...................................................................20

        2.      The Tort Claims are inadequately pleaded. .........................................20

                a.      Plaintiffs fail to plead the elements of an intentional interference
                        claim. ...........................................................................20

                        i.      Plaintiffs fail to plead facts to show that Twitter committed
                                some wrong independent of the interference itself. .......................20

                        ii.     Plaintiffs fail to plead facts to show that Twitter interfered
                                with Plaintiffs' relationships with any particular individual. ..........21

                        iii.    Plaintiffs fail to plead facts to establish the element of actual
                                disruption. ...............................................................21

                b.      Plaintiffs' claim for negligent interference with prospective
                        economic advantage fails for essentially the same reasons as the
                        claim for intentional interference. ............................................22

        3.      The statute of limitations has run for the Tort Claims. .........................22

D.      Plaintiffs' Trademark Claims are barred by a conclusive presumption that
        Twitter's mark is valid, and because they are untimely. ....................................23

        1.      The Trademark Claims are barred because the TWITTER mark is
                incontestable, and thus its registration is "conclusive evidence" that Twitter
                has the right to use that mark. .................................................23

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC

2.      The Trademark Claims are untimely. ...................................................24

E.      Dismissal Should Be With Prejudice, Since Amendment Would Be Futile.......................25

V.      CONCLUSION....................................................................................................................25

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Choices, Inc. v. Dep't of Health Servs.*,
    182 Cal. App. 4th 1661 (2010) ....................................................................................14

*Alimena v. Vericrest Fin., Inc.*,
    964 F. Supp. 2d 1200 (E.D. Cal. 2013)...........................................................................7

*Am. Gen. Life & Accident Ins. Co. v. Findley*,
    CV 12–01753 MMM, 2013 WL 1120662 (C.D. Cal. Mar. 15, 2013)...................................7

*Amacker v. Bank of Am.*,
    No. C 13-3550 CW, 2014 WL 4771668 (N.D. Cal. Sept. 24, 2014)...................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................6

*Asmodus, Inc. v. Junbiao Ou*,
    No. CV 16-2511 JGB, 2017 WL 3575467 (C.D. Cal. June 20, 2017) .........................11, 12

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) .........................................................................................6

*Beckwith v. Dahl*,
    205 Cal. App. 4th 1039 (2012) .....................................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................6

*Benay v. Warner Bros. Entm't*,
    607 F.3d 620 (9th Cir. 2010) .......................................................................................15

*Block v. eBay, Inc.*,
    747 F.3d 1135 (9th Cir. 2014) ......................................................................................14

*Brown v. Cal. State Lottery Comm'n*,
    232 Cal. App. 3d 1335 (1991) ......................................................................................11

*Buschman v. Anesthesia Bus. Consultants LLC*,
    42 F. Supp. 3d 1244 (N.D. Cal. 2014) ..........................................................................15

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) ......................................................................................7, 9

*Cansino v. Bank of Am.*,
    224 Cal. App. 4th 1462 (2014) .....................................................................................19

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) ...................................................................................25

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...................................................................................16

*Contemporary Servs. Corp. v. Staff Pro Inc.*,
   152 Cal. App. 4th 1043 (2007) ..................................................................................20

*Damabeh v. 7-Eleven, Inc.*,
   No. 5:12-CV-1739-LHK, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ..........................21

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .......................................................................................6

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   11 Cal. 4th 376 (1995) ................................................................................20, 21, 22

*Div. of Labor Law Enf't v. Transpacific Transp. Co.*,
   69 Cal. App. 3d 268 (1977) .......................................................................................13

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ....................................................................................7

*Fanucci v. Allstate Ins. Co.*,
   638 F. Supp. 2d 1125 (N.D. Cal. 2009) ......................................................................19

*Fleet v. Bank of Am. N.A.*,
   229 Cal. App. 4th 1403 (2014) ..................................................................................13

*Granadino v. Wells Fargo Bank, N.A.*,
   236 Cal. App. 4th 411 (2015), *as modified* (Apr. 29, 2015) .........................................15

*Harshad & Nasir Corp.*,
   14 Cal. App. 5th ........................................................................................................10

*Harshad & Nasir Corp. v. Glob. Sign Sys., Inc.*,
   14 Cal. App. 5th 523, 537 (2017), *review denied* (Nov. 1, 2017) ..................................9

*High Country Linens, Inc. v. Block*,
   No. C 01-02180 CRB, 2002 WL 1998272 (N.D. Cal. Aug. 20, 2002) ............................24

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) .....................................................................................24

*Kashmiri v. Regents of Univ. of Cal.*,
   156 Cal. App. 4th 809 (2007) ....................................................................................13

*Kline v. Turner*,
   87 Cal. App. 4th 1369 (2001) ....................................................................................19

*Ladas v. Cal. State Auto. Ass'n*,
    19 Cal. App. 4th 761 (1993) ................................................................................................7

*Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*,
    17 Cal. App. 4th 432 (1993) ...............................................................................................20

*Mike Nelson Co. v. Hathaway*,
    No. F 05-0208 AWI DLB, 2005 WL 2179310 (E.D. Cal. Sept. 8, 2005) ...........................15

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) .............................................................................................24

*Motha v. Time Warner Cable Inc.*,
    No. 16-cv-03585-HSG, 2017 WL 3617105 (N.D. Cal. Aug. 23, 2017).............................22

*Muse Brands, LLC v. Gentil*,
    No. 15-CV-01744-JSC, 2015 WL 4572975 (N.D. Cal. July 29, 2015)...............................18

*N. Am. Chem. Co. v. Superior Court (Trans Harbor, Inc.)*,
    59 Cal. App. 4th 764 (1997) ..............................................................................................22

*Nat'l Med. Transp. Network v. Deloitte & Touche*,
    62 Cal. App. 4th 412 (1998) ..............................................................................................22

*Neal v. Select Portfolio Servicing, Inc.*,
    No. 5:16-CV-04923-EJD, 2017 WL 4224871 (N.D. Cal. Sept. 22, 2017)..........................21

*Ochs v. PacifiCare of Cal.*,
    115 Cal. App. 4th 782 (2004) ............................................................................................10

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
    469 U.S. 189 (1985)............................................................................................................23

*Parrish v. Nat'l Football League Players Ass'n*,
    534 F. Supp. 2d 1081 (N.D. Cal. 2007) .............................................................................10

*Pease v. Brown*,
    186 Cal. App. 2d 425 (1960) .............................................................................................11

*Rockridge Tr. v. Wells Fargo, N.A.*,
    985 F. Supp. 2d 1110 (N.D. Cal. 2013) ...............................................................................9

*Ross v. Sioux Honey Ass'n, Co-op.*,
    No. C-12-1645 EMC, 2013 WL 146367 (N.D. Cal. Jan. 14, 2013) ....................................13

*Rossberg v. Bank of Am., N.A.*,
    219 Cal. App. 4th 1481 (2013), *as modified on denial of reh'g* (Sept. 26, 2013) ...............17

*Salma v. Capon*,
    161 Cal. App. 4th 1275 (2008) ..........................................................................................20

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ................................................................................................17

*Shaterian v. Wells Fargo Bank, N.A.*,
   829 F. Supp. 2d 873 (N.D. Cal. 2011) ..................................................................................11

*In re Silicon Graphics, Inc. Sec. Litig.*,
   970 F. Supp. 746 (N.D. Cal. 1997) .........................................................................................2

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ............................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................................17

*Temple v. Bank of Am., N.A.*,
   No. 15-CV-01330 NC, 2015 WL 3658834 (N.D. Cal. June 12, 2015) ................................14

*TWiT, LLC et al v. Eatlime, Inc.*,
   5:09-CV-03411 (N.D. Cal. July 24, 2009), ECF No. 1 .......................................................25

*Utterkar v. Ebix, Inc.*,
   No. 5:14-CV-02250-LHK, 2014 WL 5019921 (N.D. Cal. Oct. 6, 2014)............................16

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...............................................................................17, 18, 19

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ................................................................................................21

*Yamauchi v. Cotterman*,
   84 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................................................19

*Yari v. Producers Guild of Am., Inc.*,
   161 Cal. App. 4th 172 (2008) ..............................................................................................13

*Yu v. Design Learned, Inc.*,
   No. 15-cv-05345-LB, 2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ..................................15

**Statutes**

15 U.S.C. § 1065.......................................................................................................................23

15 U.S.C. § 1114.......................................................................................................................23

15 U.S.C. § 1115(b) ..................................................................................................................23

15 U.S.C. § 1125.......................................................................................................................23

Cal. Civ. Code § 1605........................................................................................................8, 11

Cal. Civ. Proc. Code § 337 ....................................................................................................15

Cal. Civ. Proc. Code § 339 ....................................................................................................15

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................16, 18, 19

Fed. R. Civ. P. 12(b)(6)....................................................................................................6, 7

**Other Authorities**

6 *McCarthy on Trademarks and Unfair Competition* § 32:141 (5th ed.)..................................23

ix

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

A breach-of-contract complaint must, at minimum, identify the contract the Plaintiffs claim was breached.  The alleged agreement between the parties to this case, however, cannot be found even under the most generous reading of the allegations in the Complaint.  Plaintiffs allege that an oral trademark "coexistence" agreement regarding the areas of commerce that either Twitter or TWiT would or would not enter in the future was reached during a March 2007 podcast interview on which Ev Williams, then CEO of Twitter, appeared.  But that interview simply does not include any discussion of any agreement, or any promises regarding the areas of commerce in which the Plaintiffs will engage.  To the contrary, the language on which Plaintiffs rely was a response by Williams to a third-party's question.  Similarly, the exchange of correspondence that Plaintiffs allege "confirmed" the "coexistence" agreement does not show an offer, acceptance, consideration, or any other sign of a contract.  To the contrary, at best, it shows a request for future discussions, which Plaintiffs do not allege ever took place.  Plaintiffs further do not identify any conduct that could have created a contract or any promise that could support an equitable substitute for an agreement.

Plaintiffs' insistence that the parties entered into a trademark coexistence agreement in 2007 appears to stem from the fact that, absent such agreement, their trademark infringement claim is barred by the applicable four-year statute of limitations.  But Plaintiffs have the same problem even if, assuming arguendo, there was an agreement in 2007 that was confirmed in 2009 because Twitter users have had the ability to post video content since at least 2009, and Twitter launched its own video service—Vine— in 2013, more than four years before filing.  Thus, the statute of limitations on all claims expired, at the latest, in 2017, and this action is time-barred in its entirety.  Each of the individual claims are also subject to dismissal for other, individual reasons—for example, in the case of the trademark claim, that Twitter enjoys a conclusive presumption of the right to use the TWITTER mark because Twitter's trademark registration has become incontestable due to its long standing.  Accordingly, the action should be dismissed in its entirety, with prejudice.

## II. FACTS

### A. TWiT and Twitter launched within the same period, and were each aware of the other, but no coexistence agreement was mentioned, let alone formed, on the March 2007 TWiT episode.

This Week in Tech, or "TWiT," was founded by Leo Laporte in 2005. Compl. ¶¶ 7, 11. TWiT produces and distributes talk shows via the Internet, a number of which are hosted by Laporte himself. *Id.* ¶ 7. Twitter, launched in 2006, is a global platform for public self-expression and conversation in real time. Twitter allows people to consume, create, distribute, and discover content and has democratized content creation and distribution. When it first launched, Twitter users could post textual messages and links to photos, audio, and video hosted elsewhere. *See id.* ¶¶ 13–14. Since its launch, Twitter has added the ability for users to post photos, audio, and video on Twitter itself. *See, e.g.*, *id.* ¶ 19.

In March 2007, Laporte interviewed Twitter co-founder Ev Williams on a show he co-hosted, "net@night." Compl. ¶ 12; Decl. of Joseph C. Gratz in Support of Def. Twitter, Inc.'s Mot. to Dismiss Pls.' Complaint ("Gratz Decl."), Ex. A.[1] During that show, Laporte, his co-host Amber MacArthur, and Williams discussed the Twitter name. *See* Compl. ¶ 13. MacArthur suggested that people had inquired whether Laporte was somehow associated with Twitter, and Laporte said he had considered suing Twitter but quickly disavowed any intent to sue, saying instead that the name "Twitter" was "perfect":

> MacArthur: What about the name Twitter . . . because people have asked me that as well, you know, Leo, a lot of people think that you have some affiliation with Twitter because of TWiT.TV—
>
> Laporte: Well, I almost, I thought about suing Ev, then I thought, no, he's too nice, I'm not going to sue. . .
>
> MacArthur: He's a good guy.
>
> Williams: I did worry about that.
>
> Laporte: No, I had no interest in it . . . but, I understand that, because Odeo's mascot's a bird.
>
> Williams: It was, yeah, Odeo mascot's a bird. And, you know, Twitter's just one of those names that comes out of, oh my God, what are we going to call this new thing, and you think of 10,000 things, and someone throws out "Twitter"—I think it was Noah Glass—and we liked it—
>
> Laporte: It's perfect.

---

[1] Because the content of this program is referred to in the Complaint and forms the basis for Plaintiffs' claims, Compl. ¶¶ 7 & 13, it is a part of the pleadings and may be considered at the pleadings stage. *See, e.g.*, *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 758 (N.D. Cal. 1997).

Williams: . . . and no one was using the domain.  And it's actually a real word . . . .

Gratz Decl. Ex. B (excerpting Gratz Decl. Ex. A at 35:44–36:28).  A half-hour later, in response to a question from a viewer—without objection from Laporte—Williams explained that, while at that time (March 2007), he did not think other media formats, such as audio and video, were suitable for Twitter, given the available technology, Twitter would consider it in the future:

> Laporte: You have a question for Ev?
>
> Listener: I do.  I'm just wondering, I mean, like, what direction do you see this going?  Do you see this, where you're gonna be able to upload pictures someday from your phone, doing the video thing?  Or is it going to stay strictly, just, text updates?
>
> Laporte: That's gotta be, in a way, a challenge, you know, to keep it simple.
>
> Williams: Mmhmm.  That's a good question.  That's one that we ask ourselves, pretty often.  We've stayed away for pictures or video or anything else at this point because of the desire to keep it simple, but also because of a desire to be able to do it ubiquitously.  One of the reasons there are so many interfaces and ways to use Twitter is because it is lowest-common denominator text.  And that works in IM, and SMS, and what-not.  And as soon as you start getting into other media formats, everything becomes more complicated.  So, our stance is basically, if we think we can do—pictures would be the obvious thing to start with, obviously, with as many camera phones as there are out there, but, once we think we can do that in the ubiquitous simple matter and not just add annoyance to people, we would definitely look at it, but I don't think we're there yet.
>
> Laporte: I would say don't turn it into a blogging engine, it's what it is, and that's great.
>
> Williams:  Yeah.  And there's so much—text is really powerful.  It's not going away.
>
> Laporte: I like it.  I like it.

Gratz Decl. Ex. C (excerpting Gratz Decl. Ex. A at 1:03:10–1:04:37).

Plaintiffs allege that this exchange constituted a trademark "coexistence" agreement between Twitter and TWiT (and/or Laporte).  Compl. ¶¶ 13–14, 31–32.  But as is evident from the episode, Williams was merely answering a question from a caller.  *See* Gratz Decl. Ex. C.  Neither Williams nor Laporte mention any type of agreement, they never discuss giving up any rights to expand the media in which their businesses operated, and they never reference coexistence.  *See id.*  Nonetheless, eleven years later, Plaintiffs now claim that this exchange is the basis for an oral agreement pursuant to which TWiT gave up the right to go into microblogging and Twitter gave up the right to go into audio and video. Compl. ¶¶ 13–14, 25, 31–32.

1

2

**B.      Laporte continued to talk about Twitter after the 2007 episode but never took any action, even after Twitter put the world on notice of its plans.**

3

4

5

6

In subsequent months, Laporte continued to follow Twitter closely.  In an April 2007 post on his personal blog, Laporte wrote that he would stop using Twitter and switch to another social media platform, reasoning that:  "I can't have anything to do with Twitter, either. It's just fueling the confusion."  Defendant Twitter's Req. for Judicial Notice ("RJN"), Ex. 1.[2]

7

8

9

10

In the meantime, Twitter continued to grow, and secured a trademark registration issued May 12, 2009, for a variety of services including "providing an online community forum for registered users to share information, photos, audio and video content about themselves . . . ."  RJN Ex. 2.  No one, including Plaintiffs, challenged Twitter's registration, which is valid and subsisting.  RJN Ex. 3.

11

12

Throughout this period, Laporte never alleged a coexistence agreement or claimed that Twitter violated the alleged agreement.

13

14

**C.      Laporte's and Williams' exchange about incorrect reporting on a TV show did not confirm any contract.**

15

16

17

18

19

20

21

In May 2009, media outlets reported that a "Twitter TV show" might be in the works.  *See* Compl. ¶ 15; RJN Exs. 5, 6.  A Twitter executive, Biz Stone, addressed that subject in a post on Twitter's official blog titled "We're Not Making A TV Show."  Gratz Decl. Ex. F; *see* Compl. Ex. C.[3]  Days later, Laporte wrote a letter to Williams regarding the "recent news stories."  Compl. Ex. B (hereinafter "Letter").  Plaintiffs now claim that this Letter—and Williams' response—somehow reinforced the oral coexistence agreement.  Compl. ¶ 32.  The problem, as set forth below, is that neither of the communications between Laporte and Williams reference any type of agreement.  *See id.*, Exs. B, C.

22

23

24

25

Laporte's Letter begins by referencing the March 2007 net@night episode where Williams had been a guest.  *See* Compl. Ex. B.  Laporte does not reference a coexistence agreement.  *Id.*  Instead, he recalls the pair's "talk about" Twitter and that during that episode he and Williams "talked about . . . the similarity of the TWIT and TWITTER marks."  *Id.*  Laporte never says he and Williams reached any

26

27

[2] Defendant has filed concurrently herewith a request for judicial notice of certain documents.  The RJN sets forth Twitter's arguments in support of judicial notice.

28

[3] Because it is specifically referred to in an exhibit to the Complaint, that blog post is properly before the Court.  Compl. Ex. C.

4

1   type of coexistence agreement. *See id.* Laporte's Letter expresses concern about Twitter's use of the

2   Twitter mark, and the possibility of both "forward confusion and reverse confusion." *Id.* But again,

3   Laporte never says—as Plaintiffs do now—that there was any type of agreement. *Compare id.*, Ex. B

4   *with id.*, ¶ 32. To the contrary, Laporte asks to discuss those concerns further with Williams. *See*

5   Compl. Ex. B ("I think it is critical that we discuss the boundaries between our respective uses of

6   TWITTER and TWIT."). Laporte ends his Letter by noting that he was "open to any creative solutions

7   that you may have to this problem but any solution needs to be respectful of our trademark rights." *See*

8   *id.*, p. 2.

9       Williams' reply, via email, likewise does not reference any agreement or confirm one, nor does

10  Williams reference any future agreement. *See id.*, Ex. C (hereinafter "Email"). Regarding Laporte's

11  concerns, Williams wrote: "Don't worry: We're not expanding to audio or video under the Twitter

12  brand. That news story was the result of an over-zealous production company (and extremely sloppy

13  reporting by AP)." *Id.* Williams' factual response reinforces that he is referencing—and denying—the

14  news stories by linking to one of Stone's blog posts. *See id.*; Gratz Decl. Ex. F. Plaintiffs do not allege

15  any subsequent discussions or correspondence between Laporte and Williams, or TWiT and Twitter. *See*

16  Compl. ¶¶ 18–19.

17      **D.   Laporte was well aware of audio and video on Twitter and never alleged breach of
           any agreement or infringement.**

18

19      Twitter steadily expanded its audio and video content and services. From 2009, Twitter offered

20  audio and video features in the form of links within Tweets to audio and video. *See* RJN Ex. 2.

21  Specifically, Twitter offered users the ability to add images and video via developer products such as

22  Twitvid. *See* RJN Ex. 4. In January 2013, Twitter introduced its own video-hosting feature, called Vine.

23  Laporte himself tried out Twitter's Vine video feature on a TWiT video podcast on the very day that

24  feature launched—January 24, 2013. Gratz Decl. Ex. E (excerpting Gratz Decl. Ex. D at 32:01–38:26).

25  On camera, Laporte created a video, posted it to his Twitter account, and played it back via the Twitter

26  website. *Id.*

27      After July 2014, Twitter's trademark registration, issued May 12, 2009, *see* RJN Ex. 2, became

28  incontestable due to its continuous and unchallenged use for five years. RJN Ex. 3. That registration

5

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC

identified the audio and visual aspects of Twitter's services.  *See* RJN Ex. 2.

### E.     Plaintiffs filed suit without identifying an alleged "breach."

The Complaint alleges that Laporte first became aware of Twitter's "current plans" for expanding into video in May 2017.  Compl. ¶ 19.  Laporte and TWiT did not actually file suit until January 2018, asserting 12 counts on various contract, fraud, tort, and trademark theories.  *See* Compl. ¶¶ 23–99. Plaintiffs' first four claims rest on breach of contract or equitable substitutes for breach of contract.  *See id.* ¶¶ 23–49 (hereinafter the "Contract Claims").  Plaintiffs' fifth, sixth, and eighth claims are for various theories of fraud.  *See id.* ¶¶ 50–62, 70–76 (hereinafter the "Fraud Claims").  Plaintiffs' seventh and ninth claims sound in tort.  *See id.* ¶¶ 63–69, 77–82 (the "Tort Claims").  Plaintiffs' remaining three claims relate to the TWiT trademark.  *See id.* ¶¶ 83–99 (the "Trademark Claims").

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Complaint may be dismissed based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  As explained below, Plaintiffs fail to meet the foregoing threshold requirements.

## IV.    ARGUMENT

No contract or enforceable promise has ever existed between the parties to this suit.  The conversations and writings on which Plaintiffs rely contradict the allegations in Plaintiffs' Complaint, which nonetheless fail to satisfy the elements of any of Plaintiffs' Contract Claims.  Absent any allegations of an agreement or enforceable promise, all of Plaintiffs' Contract Claims collapse into incoherence.  Plaintiffs' Fraud Claims and Tort Claims present even more problems, because they are

inconsistent with the Contract Claims and, at any rate, do not plead all of the elements of those claims.

Further, Plaintiffs' Trademark Claims fail for a simple reason:  Twitter owns a trademark registration for

TWITTER that, because of its long standing, is "incontestable" and therefore conclusively presumed to

give Twitter the right to use that trademark.  And all of the claims are time-barred, since all of the claims

arose outside of the applicable limitations period.

Because each and every claim in the Complaint fails, the Court should dismiss the Complaint for

failing to state a claim for relief.  Fed. R. Civ. P. 12(b)(6).

A.   **Plaintiffs fail to plead a contract—oral, written, implied, or by estoppel—and even if they had, the Contract Claims would be untimely.**

Plaintiffs assert a variety of potential theories why an enforceable agreement exists between the

parties.  But Plaintiffs fail to plead facts sufficient to meet the elements of any of their theories.

To state a claim on any of their contract theories, Plaintiffs' Complaint must demonstrate:  (1) the

existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by

the defendant; and (4) damages.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).  It

does not.

The first element, "[c]ontract formation[,] . . . requires that the parties[ ] reach mutual assent or

consent on definite or complete terms[,]" and this "[m]utual assent is accomplished when a

specific offer is communicated to the offeree, and an acceptance is subsequently communicated to the

offeror."  *Am. Gen. Life & Accident Ins. Co. v. Findley*, CV 12–01753 MMM (PSWx), 2013 WL

1120662, at *11 (C.D. Cal. Mar. 15, 2013) (second and third alterations in original) (quoting *Netbula,*

*LLC v. BindView Dev. Corp*., 516 F.Supp.2d 1137, 1155 (N.D. Cal. 2007)).  Mutual consent "cannot

exist unless the parties 'agree on the same thing in the same sense.'"  *Bustamante v. Intuit, Inc.*, 141 Cal.

App. 4th 199, 208 (2006) (quoting Cal. Civ. Code § 1580).  Furthermore, in order to be enforced, a

contract must be "sufficiently definite . . . for the court to ascertain the parties' obligations and to

determine whether those obligations have been performed or breached."  *Alimena v. Vericrest Fin., Inc*.,

964 F. Supp. 2d 1200, 1220 (E.D. Cal. 2013), *as corrected* (Aug. 19, 2013) (quoting *Bustamante*, 141

Cal. App. 4th at 209).  Conversely, a contract is void and unenforceable where a contract is so uncertain

and indefinite that the intention of the parties on material questions cannot be ascertained.  *Ladas v. Cal.*

7

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC

*State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993).  Finally, consideration is required—"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."  Cal. Civ. Code § 1605.

Plaintiffs fail to plead facts to show a contract or enforceable promise existed under any theory. The Contract Claims are also all untimely.  *See infra* Part IV-A-5.

### 1.     The netcast exchange between Laporte and Williams did not create an oral coexistence contract.

First, Plaintiffs allege an oral "coexistence agreement"—that, during the episode of "net@night" on which Williams was a guest, TWiT agreed not to enter the microblogging space, and Twitter, in exchange, agreed not to go into the audio/video space.  *See* Compl. ¶¶ 14–15, 17–18, 31.  But Plaintiffs' own allegations regarding the purported "agreement"—as well as the words exchanged on the net@night talk show, which Plaintiffs refer to in the Complaint—show that there was no agreement of any kind formed during that show.

### a.     There was no consent.

Plaintiffs never plead mutual consent because they cannot allege either offer or acceptance in either of the net@night episode's two relevant exchanges.  Williams' comments about the then-current scope of Twitter's business were in response to a question from a listener.  *See* Gratz Decl. Ex. C. Williams did not direct his words toward TWiT or Laporte, or even mention TWiT in his response; Williams did not speak in the context of a negotiation with Laporte or TWiT; and Williams did not expressly or implicitly agree to enter into a contract with Laporte or TWiT.  *See id.*  Significantly, Williams' comments leave the door open for Twitter to expand its services into images and video once technological advances make it more convenient.  Moreover, the context of the *earlier* exchange between Laporte and Williams strengthens the innocuousness of Williams' response.  Only a half-hour prior to the exchange that purportedly created an oral agreement, Laporte said that he would *not* sue Williams.  *See* Gratz Decl. Ex. B.  Williams would have had no reason to believe he was avoiding litigation by his words.  At no time during this episode did the parties "agree on the same thing in the same sense," and

for that reason the mutual consent necessary to form an oral agreement was wholly absent. *See*

*Bustamante*, 141 Cal. App. 4th at 208.

### b.      There were not sufficiently definite contractual terms.

The net@night exchanges also fall into the category of indefinite and unenforceable words that do

not express essential terms. *See Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1142 (N.D.

Cal. 2013) (citing *Ladas*, 19 Cal. App. 4th at 770).   At the most basic level, there is no way to determine

the subject matter of the alleged agreement—what were the parties agreeing on at the same time and in

the same sense?  More specifically, what promise did either side make?  How long would the alleged

agreement last, and what, for example, would be grounds for termination?  The lack of basic clarity is not

consistent with an enforceable agreement. *See id.*

### c.      There was no consideration.

Plaintiffs do not even attempt to allege consideration for the oral agreement. *See* Compl. ¶¶ 30–

36.  Nor can Paragraph 25 of the Complaint—which relates to the alleged written contract discussed

below—be incorporated by reference into the oral claim via Paragraph 30, as Paragraph 25 spoke only of

"consideration *for the written contract*." *See id.* ¶ 25 (emphasis added).  Because consideration is a

necessary element of every contract claim, this forms an independent ground for dismissal of the claim

based on an oral agreement.[4]

### d.      The alleged oral contract runs afoul of the statute of frauds.

"Under California's statute of frauds, when . . . a contract is not to be performed within one year

it 'or some note or memorandum thereof, [must be] in writing and subscribed by the party to be charged

or by the party's agent.'" *Harshad & Nasir Corp. v. Glob. Sign Sys., Inc.*, 14 Cal. App. 5th 523, 537

(2017), *review denied* (Nov. 1, 2017) (second alteration in original) (citing and quoting Cal. Civ. Code §

1624(a)).  Plaintiffs allege that the oral agreement the parties reached lasted for "years."[5]  Compl. ¶ 14.

---

[4] Like Plaintiffs' claim for breach of a written agreement, Plaintiffs' failure to plead facts to show a contract existed also renders the Complaint incoherent and deficient on the other elements of a claim for breach. *See infra* Part IV-A-2-c.

[5] This is made clearer by walking through what Plaintiffs' claim for breach necessarily entails.  As noted above, Plaintiffs' Complaint lacks the information necessary to understand when or how Twitter breached any purported agreement. *See supra*, Part A-1-d.  But it *must* be true based on Plaintiffs' Complaint that this breach took place after the summer of 2009, as the writings exchanged between the

They therefore concede that the alleged oral agreement is subject to the statute of frauds and is not enforceable unless it was reduced to a writing.  *See Harshad & Nasir Corp.*, 14 Cal. App. 5th at 537.  To satisfy the statute of frauds, such writing must embody the agreement's essential terms.  *See id.*  The only "writings" referenced in the Complaint are the Letter and Email between Laporte and Williams, two years later, in 2009.  Those "writings" are insufficient to satisfy the statue of frauds because, as explained below, they lack all essential terms.  *See supra* Part IV-A-2.  The alleged oral contract therefore violates the statute of frauds and must fail.

### 2. Larporte's Letter to Williams about false reports of a TV show, and Williams' Email in response, did not form or "confirm" a contract.

Plaintiffs next claim that, years after the alleged oral agreement, Laporte and Williams "confirmed" the coexistence contract with a written contract.  Plaintiffs assert that Laporte's Letter and Williams' Email define and confirm the essential terms of a written contract by which Twitter agreed not to distribute audio and video content under the Twitter Brand.  Compl. ¶ 23.

Plaintiffs' written contract claim, just like its oral contract claim, suffers from basic and fatal flaws.  Neither the Letter nor the Email is an executed written contract, and Plaintiffs do not contend otherwise.  *See id.* ¶ 24.  In the absence of an executed agreement, Plaintiffs bear the burden to plead the "legal effect" of the writings they rely on.  *See Ochs v. PacifiCare of Cal.*, 115 Cal. App. 4th 782, 795 (2004).  That requires Plaintiffs to "allege the substance of [the agreement's] relevant terms."  *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007) (quoting *McKell v. Wash. Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006)).  Merely pointing to the language of the instrument, without a more "careful analysis," is insufficient to state a claim.  *Id.* (quoting *McKell*, 142 Cal. 4th at 1489).

As explained below, Plaintiffs fail to plead the relevant, essential terms of the alleged agreement.  Neither the Letter nor Email set forth the alleged contract's duration, the scope of the parties' relative

---

Letter and the Email "confirmed" that oral agreement.  *See* Compl. ¶ 32.  This exchange serving that purpose is incompatible with the agreement being breached materially prior to that point.  That means that the purportedly material breach being sued on took place at a minimum more than two years after reaching the oral agreement—necessarily implying that the contract sought to be enforced continued to have performance obligations that stretched more than a year beyond the March 2007 netcast episode.

1  duties, or when performance was due.  That alone means their claims fail.  *Asmodus, Inc. v. Junbiao Ou*,

2  No. CV 16-2511 JGB (DTBx), 2017 WL 3575467, at \*8 (C.D. Cal. June 20, 2017) (dismissing a

3  counterclaim for breach of contract that "fail[ed] to adequately allege the essential terms of the purported

4  contract or contracts, including, its duration, the scope of the parties' relative duties, when performance

5  was due, and what consideration was bargained for" because this made it impossible to determine

6  whether the claim was "plausible").  In addition to this fatal flaw, Plaintiffs again fail to plead critical

7  elements of a breach of contract claim.

8  ### a.  There was no offer or acceptance.

9  Again, the Complaint lacks any facts to support a coherent theory of offer and acceptance—two

10  essential elements for a written contract to exist.  *Brown v. Cal. State Lottery Comm'n*, 232 Cal. App. 3d

11  1335, 1339 n.1 (1991) ("The successful formation of a contract requires an offer and acceptance.").

12  Laporte's Letter invites Williams to discuss an agreement; it contains no offer for Williams to accept.

13  *See* Compl. Ex. B.  Lest there be any doubt as to the lack of a meeting of the minds, Laporte's Letter

14  does not even suggest that there was any kind of deal; to the contrary, it suggests discussing "creative

15  solutions" and "continuing the conversation," but contains no promise, even as a first proposal, for TWiT

16  to refrain from going into Twitter-style microblogging.  *See id.*  Plaintiffs therefore fail to plead facts the

17  offer and acceptance essential for a contract to exist.

18  ### b.  There was no consideration.

19  The alleged written agreement also lacks consideration.  *Shaterian v. Wells Fargo Bank, N.A.*,

20  829 F. Supp. 2d 873, 887 (N.D. Cal. 2011) (citing Cal. Civ. Code § 1550).  A promise to confer a benefit

21  or suffer prejudice can be consideration.  *See* Cal. Civ. Code § 1605.  But such a promise is not adequate

22  to provide consideration if the promise fails to place conditions on the other party and leaves the other

23  party "free to withdraw."  *See Shaterian*, 829 F. Supp. 2d at 887; *Pease v. Brown*, 186 Cal. App. 2d 425,

24  431 (1960).

25  Plaintiffs baldly allege consideration for the written agreement in the form of "promises and

26  covenants by Plaintiffs and Twitter not to expand their respective goods and services into the goods and

27  services of the other party, as well as TWiT's decision to refrain from enforcing its rights through legal

28  means."  Compl. ¶ 25.  The Letter and the Email contradict these allegations.  Laporte's Letter never

references a contract, and Laporte never even refers to the consideration TWiT allegedly offered: not expanding into Twitter's services.  *Id.* ¶¶ 24–25 & Ex. B.  As for Williams' response, it must be read in light of why Laporte wrote to Williams, which, *according to the Letter*, was because of the reports about a Twitter television show.  *See* Compl. Ex. B.  In that context, it is clear that nothing resembling an exchange of promises regarding the use of video on Twitter or TWiT's microblogging took place, let alone an understanding between the parties that such promises were being exchanged as part of an agreement.  Neither the Letter nor the Email contains a promise not to expand in the future, *let alone* mutual promises not to expand.  *See* Compl. Exs. B, C.  And the Letter does not even *imply* that TWiT would give up any of its own rights to expand.  *See* Compl. Ex. B.  The most Laporte wrote was that he did not want to use legal means to protect "our mark."  *See id.*  But Laporte did not state that he would sue subject to any agreement, and, further, did not agree to refrain from suing, meaning there was no promise made by TWiT that could constitute consideration.  *See Asmodus*, 2017 WL 3575467, at *8.

Williams, for his part, does not in the Email show any understanding that he was giving up rights in order to avoid legal claims.  *See* Compl. Ex. C.  The subject line of Williams' Email is "TV," referencing the relevant news coverage, and Williams conveyed a link to a post titled "We're Not Making A TV Show."  *See id.*; Gratz Decl. Ex. F.  These are the words of a person responding factually to questions, not finalizing a multi-year business arrangement.

<blockquote>
c.  <b>Plaintiffs' allegations for the other elements of a breach of written contract claim are also deficient.</b>
</blockquote>

Plaintiffs also fail to plead the other elements of their claim.  For instance, as to breach, Plaintiffs point to Twitter's intent to use the Twitter mark "via a distribution channel dedicated to the streaming and downloading of video content over the [I]nternet," Compl. ¶ 27, but the Complaint says nothing about where, when, and how Twitter breached.  Further, in light of the inability to define the terms of the agreement or the breach, Plaintiffs cannot allege harm flowing from that (unspecified) breach.  *See id.* ¶ 28.

<blockquote>
3.  <b>There was no "implied" contract between the parties.</b>
</blockquote>

Plaintiffs next theorize that even if the parties never agreed to anything in words, written or spoken, their conduct created an implied contract.  *See id.* ¶ 38.  An implied contract requires "the same

elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct."  *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).  "[T]he vital elements of a cause of action based on contract are mutual assent . . . and consideration.  As to the basic elements, there is no difference between an express and implied contract."  *Div. of Labor Law Enf't v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977).  To survive a motion to dismiss, a claim for breach of an implied contract must include "specific allegations suggesting that the conduct of the parties here manifested an intent to create a contract . . . ."  *Ross v. Sioux Honey Ass'n, Co-op.*, No. C-12-1645 EMC, 2013 WL 146367, at \*18 (N.D. Cal. Jan. 14, 2013).  The facts pleaded in support of Plaintiffs' breach-of-implied-contract claim are insufficient.

To begin with, Plaintiffs again fail to plead facts that meet the elements of mutual assent and consideration for breach of an express contract, *see* Parts IV-A-1, IV-A-2, and therefore fail to plead facts that state a claim for breach of an implied contract.

Furthermore, Plaintiffs make no adequate allegations of the relevant conduct.  *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 827 (2007).  Plaintiffs' allegations of breach of implied contract are in most respects identical to their allegations regarding breach of written contract.  *Compare* Compl. ¶ 24 *with id.* ¶ 38.  Plaintiffs mention "conduct" in passing, and then state the conclusion, "Twitter's conduct demonstrates and confirms an implied contract made with Plaintiffs."  *See id.* ¶ 38.  But there is no description whatsoever of the conduct, and because conduct manifesting intent to contract is an *element* of a breach of implied contract claim, *see Kashmiri*, 156 Cal. App. 4th at 827, Plaintiffs' allegations in Paragraph 38 are merely conclusory.  Plaintiffs have therefore failed to state a claim for breach of implied contract.

## 4.   Promissory estoppel is inapplicable and inadequately pleaded.

In the alternative to their causes of action premised on a legally enforceable contract, Plaintiffs bring a separate cause of action under a promissory-estoppel theory.  *See* Compl. ¶¶ 43–49.  Promissory estoppel is an equitable claim "that substitutes reliance on a promise for consideration 'in the usual sense of something bargained for and given in exchange.'"  *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1412–13 (2014) (quoting *Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d 240, 249 (Cal. 1969)).  For this claim, Plaintiffs allege that "[o]n multiple occasions, Twitter, by both express assertions and through its

1    conduct, promised that it would forebear from providing a means for the general public to stream or

2    download video and audio content over the internet."  Compl. ¶ 44.

3            A claim for promissory estoppel requires: "(1) a promise clear and unambiguous in its terms;

4    (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and

5    foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  *Advanced Choices,*

6    *Inc. v. Dep't of Health Servs.*, 182 Cal. App. 4th 1661, 1672 (2010) (internal citation and quotation marks

7    omitted).  Plaintiffs' Complaint lacks allegations sufficient to establish these elements.

8                    **a.        Plaintiffs fail to identify any clear and unambiguous promise.**

9            A claim for promissory estoppel requires a promise "definite enough that a court can determine

10   the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational

11   basis for the assessment of damages."  *Temple v. Bank of Am., N.A.*, No. 15-CV-01330 NC, 2015 WL

12   3658834, at *4 (N.D. Cal. June 12, 2015).  But no promise is pleaded.  Plaintiffs merely allege that "[o]n

13   multiple occasions, Twitter, by both express assertions and through its conduct, promised that it would

14   forebear from providing a means for the general public to stream or download video and audio content

15   over the internet."  Compl. ¶ 44.  That simply states the conclusion that a promise was made, but does not

16   state a sufficiently definite promise or say who made it, or when or where it was made.

17           Further, there is no reason to believe Plaintiffs can fix the flaw in this claim by alleging that

18   definite promises were made in Williams' Email.  In fact, courts have found *more* definite promises to

19   *still* be insufficient to state a claim.  For example, in a 2014 case, allegations of a promise to "definitely

20   re-modify" a loan and "get [Plaintiffs] a better loan in the future, in about two years" were held to be

21   insufficiently definite.  *Amacker v. Bank of Am.*, No. C 13-3550 CW, 2014 WL 4771668, at *6 (N.D.

22   Cal. Sept. 24, 2014).  And here, Williams' statement is not even phrased in the future tense, but is instead

23   a statement about the present:  "Don't worry:  We're not expanding to audio or video under the Twitter

24   brand.  That news story was the result of an over-zealous production company (and extremely sloppy

25   reporting by AP).  See our post: http://blog.twitter.com/2009/05/were-not-making-tv-show.html."

26   Compl. Ex. C.  Such statements about a party's present activities do not constitute enforceable promises,

27   as a matter of law.  *See, e.g.*, *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (ruling that the

28   statement in eBay's Terms of Service, "We are not involved in the actual transaction between buyers and

1    sellers," is not an enforceable promise).  Because it contains no promissory language at all, Williams'

2    Email cannot be the basis for a promissory-estoppel claim.

3                    **b.      Plaintiffs also fail to plead reasonable reliance on any promise.**

4            Promissory estoppel also requires reasonable reliance.  *Granadino v. Wells Fargo Bank, N.A.*, 236

5    Cal. App. 4th 411, 416 (2015), *as modified* (Apr. 29, 2015).  Allegations that simply state that the

6    plaintiff relied on unspecified "representations and promises" and do not speak to the reasonableness of

7    that reliance are "wholly conclusory" and insufficient as a matter of law.  *See Yu v. Design Learned, Inc.*,

8    No. 15-cv-05345-LB, 2016 WL 1621704, at *7 (N.D. Cal. Apr. 22, 2016).  Reliance cannot be

9    established where a plaintiff "does not allege facts showing his reliance was distinct from his

10   performance of the obligation he incurred under the contract."  *See id.*

11           Here, Plaintiffs simply plead reliance on unidentified "assertions" and "conduct."  Compl. ¶¶ 44,

12   45.  Equally problematic, Plaintiffs' alleged reliance is exactly the same as the alleged consideration

13   identified in Plaintiffs' Contract Claims—Plaintiffs' forbearance from suit.  *Id.* ¶ 45.  Both of these

14   failings are fatal to the claim.  *See Mike Nelson Co. v. Hathaway*, No. F 05-0208 AWI DLB, 2005 WL

15   2179310, at *6 (E.D. Cal. Sept. 8, 2005) ("If [a plaintiff's] only claimed reliance is performance of the

16   act bargained for, [promissory estoppel] is unavailable.") (alterations in original) (quoting 1 Witkin,

17   *Summary of California Law: Contracts* § 251 (9th ed.)); *see also Yu*, 2016 WL 1621704, at *7.

18                   **5.      The statute of limitations has run for every Contract Claim.**

19                   **a.      The Complaint was filed outside of the applicable limitations period.**

20           The statute of limitations for a contract claim begins to run when all four elements of the breach

21   claim are present.  *See Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D.

22   Cal. 2014) (citing Cal. Civ. Proc. Code § 337).  The statute of limitations for a contract claim is two years

23   for oral and implied contracts and four years for written contracts.  Cal. Civ. Proc. Code § 337 (written

24   contracts and promises), *id.* § 339 (oral contracts and promises); *Benay v. Warner Bros. Entm't*, 607 F.3d

25   620, 633 (9th Cir. 2010) (implied contracts).

26           Plaintiffs filed suit on January 16, 2018.  Compl., ECF No. 1.  To be timely, the claims for written

27   contract and promissory estoppel must have accrued no earlier than January 16, 2014 (four years before

28   filing), and the claims for breach of oral contract or implied contract must have accrued no earlier than

1  January 16, 2016 (two years before filing).  But Plaintiffs' Contract Claims arose, at the latest, in January

2  2013 when Twitter launched Vine, which allowed Twitter users to post videos directly in their Tweets.

3  Thus, Plaintiffs sued outside the applicable limitations period.

> **b.     The delay in filing suit cannot be excused under the discovery rule, since Plaintiffs used Twitter's video-posting features themselves more than four years before filing suit.**

6          California permits suits filed outside the applicable limitations period to proceed where the victim

7  could not reasonably have discovered the facts giving rise to the claim in time to assert and protect their

8  legal rights.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008).  "The

9  discovery rule is based on the notion that statutes of limitations are intended to run against those who fail

10 to exercise reasonable care in the protection and enforcement of their rights[.]"  *Utterkar v. Ebix, Inc.*,

11 No. 5:14-CV-02250-LHK, 2014 WL 5019921, at *5 (N.D. Cal. Oct. 6, 2014) (quoting *E-Fab, Inc. v.*

12 *Accountants, Inc. Servs.*, 153 Cal. 4th 1308, 1318 (2007)).  "A plaintiff whose complaint shows on its

13 face that [his or her] claim would be barred without the benefit of the discovery rule must specifically

14 plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier

15 discovery despite reasonable diligence."  *Id.* (quoting *E-Fab, Inc.*, 153 Cal. 4th at 1318).  The Complaint

16 contains no such facts, and thus the discovery rule does not save Plaintiffs from dismissal.

17         Indeed, amendment to attempt to plead such facts would be futile, because Plaintiffs indisputably

18 knew that Twitter had launched video features by January 24, 2013 at the latest.  Laporte used those

19 features himself on that date, on camera, on one of his talk shows.  Gratz Decl. Ex. E.  Accordingly,

20 Plaintiffs' Contract Claims are time-barred.

21    **B.     Plaintiffs fail to plead a fraud claim, and even if they had, it would be time barred.**

22         Plaintiffs' three state-law causes of action for false promise, intentional misrepresentation, and

23 negligent misrepresentation are Fraud Claims.  *See* Compl. ¶¶ 50–62, 70–76.  Those claims each fail for

24 two independent reasons: because they are not pleaded with particularity, as the Federal Rules require,

25 and because they are time-barred.

26          **1.     The Fraud Claims are not pleaded with particularity.**

27         The Federal Rules of Civil Procedure set a heightened pleading standard for fraud claims,

28 requiring that they be pleaded with particularity, a higher burden than notice pleading.  Fed. R. Civ. P.

9(b); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (discussing "the heightened pleading standard set forth in Rule 9(b).").

"It is established law, in this circuit and elsewhere, that [Federal Rule of Civil Procedure] 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Under both federal and California law, elements of fraud must be pleaded with specificity, including "'the who, what, when, where, and how' of the misconduct charged," so as to put the defendant on notice of the charges against which he must defend. *Id.* at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "The requirements of Rule 9(b) are designed to prohibit a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). As discussed below, each of the three Fraud Claims fails to meet that standard, and is subject to dismissal.

### a.     The false-promise claim is not pleaded with particularity.

Under California law, the elements necessary to prove the "false promise" theory of fraud are: "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]." *See Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1498 (2013), *as modified on denial of reh'g* (Sept. 26, 2013) (alteration in original). Allegations of fraud by false promise require the plaintiff to plead "what is false or misleading about a statement, and why it is false." *See Vess*, 317 F.3d at 1106. A Complaint typically must say when and how the promise was made. *See Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060–61 (2012).

Plaintiffs do not do any of that. They simply say that "Twitter" (without saying who at Twitter) "made promises to Plaintiffs that were material to Plaintiffs" (without saying what promises, or what was false about them, or why, or when they were made, or by whom), Compl. ¶ 51, and that "Plaintiffs reasonably relied upon the promises" (without saying how), *id.* ¶ 53. They say that "Defendant's failures to perform and keep its promises were substantial factors in causing harm to Plaintiffs by its use of the TWITTER mark in connection with streaming and download of video content over the internet" (without saying how the use of the TWITTER mark caused any such harm). *Id.* ¶ 55. These allegations do not

17

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC

1  remotely meet the Rule 9(b) standard of pleading "the who, what, when, where, and how' of the

2  misconduct charged." *Vess*, 317 F.3d at 1106.

3          **b.**      **The intentional-misrepresentation claim is not pleaded with**
   **particularity.**

4

5         To state a claim for intentional misrepresentation under California law, a plaintiff must plead

6  seven elements with particularity:  (1) the defendant represented to the plaintiff that an important fact

7  was true; (2) that representation was false; (3) the defendant knew that the representation was false when

8  the defendant made it, or the defendant made the representation recklessly and without regard for the

9  truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably

10  relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the

11  representation was a substantial factor in causing that harm to the plaintiff.  *Stearns v. Select Comfort*

12  *Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *10 (N.D. Cal. June 5, 2009) (citing *Manderville v.*

13  *PCG & S Group, Inc.*, 146 Cal. App. 4th 1486, 1498 (2007)).

14         Plaintiffs again fail to plead the "when" or the "where."  *Vess*, 317 F.3d at 1106.  Instead

15  Plaintiffs merely allege unspecified "multiple occasions" when representations took place.  Compl. ¶ 72.

16  Plaintiffs also fail to identify the "what" of those representations.  *Vess*, 317 F.3d at 1106.  Nor is the

17  "who" narrowed to any Twitter employee past or present; the allegations merely state that "Defendant"—

18  i.e., Twitter—made the misrepresentation.  Compl. ¶ 71.  Nor is it possible to discern "who" had the

19  intent to defraud.  *Vess*, 317 F.3d at 1106.  As with the false-promise claim, the intentional-

20  misrepresentation claim fails to meet the Rule 9(b) standard, and is subject to dismissal.

21          **c.**      **The negligent-misrepresentation claim is not pleaded with**
   **particularity.**

22

23         "Under California law, fraudulent and negligent misrepresentation differ only in the level of

24  scienter involved; fraudulent misrepresentation requires knowledge or reckless indifference to the falsity

25  of the statement rather than mere negligence."  *Muse Brands, LLC v. Gentil*, No. 15-CV-01744-JSC,

26  2015 WL 4572975, at *6 (N.D. Cal. July 29, 2015).  Like a claim for intentional (or "fraudulent")

27  misrepresentation, a claim for negligent misrepresentation is subject to the heightened pleading standards

28  of Rule 9(b).  *Id.*

18

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC

As with the other fraud claims, Plaintiffs simply recite the elements of the cause of action with the same vague gestures at representations at unspecified times by unspecified individuals, leading to unspecified acts in reliance at unspecified times, and unspecified harm to Plaintiffs.  Compl. ¶¶ 58–62. They do not specify "the who, what, when, where, and how' of the misconduct charged," *Vess*, 317 F.3d at 1106, and therefore do not meet the Rule 9(b) pleading standard.

### 2.    The statute of limitations has run as to every Fraud Claim.

The false-promise and intentional-misrepresentation claims are subject to three-year statutes of limitations.  *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (2001).  The negligent-misrepresentation claim, which as discussed above sounds in fraud, is subject to the same three-year statute of limitations. *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1133 n.5 (N.D. Cal. 2009).  As with the Contract Claims, the statute of limitations begins to run when all elements of the cause of action have been completed.  *See Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1011 (N.D. Cal. 2015).

For the fraud claims to be timely, those elements would need to have been completed no earlier than January 16, 2015—three years before the January 16, 2018 filing of the Complaint.  Compl., ECF No. 1.  But as discussed above with respect to the Contract Claims, Twitter launched its Vine video features in 2013.  *See* Gratz Decl. Ex. E.  And while the discovery rule applies to fraud claims, "plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint."  *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014) (internal quotation omitted).  As discussed above with respect to the Contract Claims, Plaintiffs not only fail so to plead, but they could not so plead, because the discovery occurred, at latest, on camera on one of Plaintiffs' talk shows on January 24, 2013.  Gratz Decl. Ex. E.  Accordingly, the Fraud Claims, too, are time-barred.

### C.    Plaintiffs' Tort Claims are subject to dismissal.

As with the Contract Claims and the Fraud Claims, Plaintiffs' Tort Claims—for intentional and negligent interference with prospective economic advantage—are duplicative of the Contract Claims, are inadequately pleaded on their own merits, and are time-barred.

1          **1.     The Tort Claims are simply repackaged Contract Claims, and fail on the
2          same basis.**

3          Plaintiffs' failure on their Contract Claims should also cause their Tort Claims to fail, as the Tort

4  Claims simply restate and repackage the Contract Claims.  Courts hearing similar claims have refused to

5  allow a plaintiff to recover in tort what they cannot recover in contract.  *Los Angeles Equestrian Ctr., Inc.*

6  *v. City of Los Angeles*, 17 Cal. App. 4th 432, 449 (1993) ("To the extent that these claims are simply

7  restatements of the contract claims, summary judgment was properly granted . . . .").  There is no

8  justification for Plaintiffs to use a tort theory to repackage their failed Contract Claims, and the Court

9  may consider this as an additional reason to dismiss the claim.  *See id.*

10         **2.     The Tort Claims are inadequately pleaded.**

11         While they recite the elements of the causes of action, each of the Tort Claims fails to plead

12  supporting facts sufficient to state a claim.

13                 **a.     Plaintiffs fail to plead the elements of an intentional interference claim.**

14         "The elements of the tort of interference with prospective economic advantage are (1) a

15  relationship between the plaintiff and some third party with the probability of future economic benefit to

16  the plaintiff; (2) the defendant's knowledge of the relationship; (3) a wrongful act, apart from the

17  interference itself, by the defendant designed to disrupt the relationship; (4) actual disruption of the

18  relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."

19  *Salma v. Capon*, 161 Cal. App. 4th 1275, 1290 (2008) (internal quotation marks omitted) (citation

20  omitted).  Plaintiffs fail to plead any of these elements adequately.

21                         **i.     Plaintiffs fail to plead facts to show that Twitter committed
22                         some wrong independent of the interference itself.**

23         The third element of the tort has received special emphasis in case law.  "[A] plaintiff seeking to

24  recover for an alleged interference with prospective economic relations has the burden of pleading and

25  proving that the defendant's interference was wrongful by some legal measure other than the fact of

26  interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc*., 11 Cal. 4th 376, 392–93 (1995)

27  (citation and internal quotation marks omitted); *accord Contemporary Servs. Corp. v. Staff Pro Inc*., 152

28  Cal. App. 4th 1043, 1060 (2007) ("In order to prove intentional or negligent interference with

prospective economic advantage, plaintiffs must show defendants engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself.").

Despite this, Plaintiffs do not allege conduct "that was wrongful by some legal measure other than the fact of interference itself." *Della Penna*, 11 Cal. 4th at 393. The facts instead relate solely to the actual interference. *See, e.g.*, Compl. ¶ 66 ("By intentionally expanding its platform to include distribution of video content, Twitter has intentionally disrupted Plaintiffs' relationships with both consumers and advertisers alike."). Accordingly, the claim is legally insufficient to state a claim for intentional interference with prospective economic advantage.

### ii.     Plaintiffs fail to plead facts to show that Twitter interfered with Plaintiffs' relationships with any particular individual.

It is "essential" to a claim for intentional interference with prospective advantage "that the Plaintiff allege facts showing that Defendant interfered with Plaintiff's relationship with a particular individual." *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (citing *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996)). Claims directed to lost opportunities or broader market interference are not cognizable. *See Westside*, 42 Cal. App. 4th at 527. The requirement to identify the relationship allegedly interfered with ensures there is a basis to think the defendant prevented the plaintiff from receiving a benefit the plaintiff was likely to receive. *See Damabeh*, 2013 WL 1915867, at *10.

Plaintiffs attempt to define the relationship as TWiT's connection to unidentified "consumers and advertisers." This pleading is inadequate as it fails to identify any particular person, instead resting on the class of "consumers and advertisers" rather than any identified individual. *See id.*

### iii.     Plaintiffs fail to plead facts to establish the element of actual disruption.

Finally, while Plaintiffs imply actual disruption, *see* Compl. ¶ 66, they do not actually state the nature of the disruption. Even by notice pleading standards the allegation of disruption is purely conclusory, and therefore does not plead the required element. *Neal v. Select Portfolio Servicing, Inc.*, No. 5:16-CV-04923-EJD, 2017 WL 4224871, at *5 (N.D. Cal. Sept. 22, 2017).

Because they fail to plead any of its elements, Plaintiffs' claim for intentional interference with

1   prospective economic advantage is subject to dismissal.

2                          **b.**       **Plaintiffs' claim for negligent interference with prospective economic**
3                                     **advantage fails for essentially the same reasons as the claim for**
                                  **intentional interference.**

4          The tort of negligent interference with prospective economic advantage is established where a

5   plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party

6   which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the

7   defendant knew of the existence of the relationship and was aware or should have been aware that if it

8   did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in

9   whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant

10  was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually

11  interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage

12  reasonably expected from the relationship. *N. Am. Chem. Co. v. Superior Court (Trans Harbor, Inc.)*, 59

13  Cal. App. 4th 764, 786 (1997). The "independently wrongful" element of the intentional interference tort

14  also applies to the negligent interference tort. *See Nat'l Med. Transp. Network v. Deloitte & Touche*, 62

15  Cal. App. 4th 412, 440 (1998).

16         The elements of this claim are not met, for the same reasons as the arguments above as to

17  intentional interference, including the absence of any independent wrong. *Della Penna*, 11 Cal. 4th at

18  393. In short, Plaintiffs' failure to allege anything beyond the actual interference dooms their negligent

19  interference claim. *See, e.g.*, Compl. ¶ 66.

20                 **3.**       **The statute of limitations has run for the Tort Claims.**

21         "Under California law, the statute of limitations for [] intentional or negligent interference with

22  prospective economic advantage is two years." *Motha v. Time Warner Cable Inc.*, No. 16-cv-03585-

23  HSG, 2017 WL 3617105, at *2 (N.D. Cal. Aug. 23, 2017). Plaintiffs filed suit on January 16, 2018, so to

24  be timely their Tort Claims must have accrued no earlier than January 16, 2016.

25         Like Plaintiffs' Contract and Fraud Claims, all of the elements necessary for the causes of action

26  in the Tort Claims to accrue were in place long before January 2016. Any alleged tortious acts took

27  place in 2009, and Twitter's public foray into video and audio content was impossible to mistake by

28  2013, as shown by Plaintiffs' own use of those features. The Tort Claims are therefore untimely, and

1  should therefore be dismissed as barred by the statute of limitations.

2     **D.**  **Plaintiffs' Trademark Claims are barred by a conclusive presumption that Twitter's mark is valid, and because they are untimely.**

3

4     Plaintiffs bring two claims under the federal Lanham Act: a claim for trademark infringement

5  under Lanham Act Section 32(1)(a), *codified at* 15 U.S.C. § 1114; and a claim for unfair competition

6  under Lanham Act Section 43(a), *codified at* 15 U.S.C. § 1125.  Compl. ¶¶ 84–87.  Separately, Plaintiffs

7  bring a claim for violation of their common law trademark rights.  *See* Compl. ¶¶ 95–99.  Each of the

8  Trademark Claims directs its allegations toward Twitter's use of the "Twitter" mark.  *See* Compl. ¶¶ 84,

9  88 (count ten); *id.*, ¶¶ 90, 94 (count eleven); *id.* ¶¶ 96, 99 (count twelve).

10     **1.**  **The Trademark Claims are barred because the TWITTER mark is incontestable, and thus its registration is "conclusive evidence" that Twitter has the right to use that mark.**

11

12     All of Plaintiffs' Trademark Claims are barred as a matter of law because they depend on the

13  allegation that Twitter does not have the right to use the TWITTER mark in connection with audio and

14  video features of the Twitter service.  To the contrary, since 2009, Twitter has owned Trademark

15  Registration No. 3,619,911 for TWITTER in connection with various services.  Significantly, the

16  registration was granted by the United States Patent & Trademark Office without any objection by

17  Plaintiffs during the public opposition period.

18     The Lanham Act provides protections for longstanding trademark registrations against precisely

19  this sort of eleventh-hour attack.  Specifically, when a mark has been in continuous use for five years

20  after it is registered, and the registrant submits an affidavit saying so, that registration becomes

21  "incontestable."  15 U.S.C. § 1065.  An incontestable registration constitutes "conclusive evidence of the

22  registrant's exclusive right to use the registered mark."  15 U.S.C. § 1115(b).  As the Supreme Court has

23  observed, "[t]he incontestability provisions . . . provide a means for the registrant to quiet title in the

24  ownership of his mark."  *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985).  "This

25  statutory language literally means that if a defendant in an infringement lawsuit is the owner of a valid

26  incontestable registration, its use of the mark on those goods or services is secure and cannot be

27  disturbed.  This creates a safe harbor for that mark as used on those goods or services."  6 *McCarthy on*

28  *Trademarks and Unfair Competition* § 32:141 (5th ed.).

1      Trademark Registration No. 3619911 for the mark TWITTER became incontestable on July 24,

2   2014.  RJN Ex. 3.  Among the goods and services specified in Twitter's registration is "providing an

3   online community forum for registered users to share . . . audio and video content about themselves."

4   RJN Exs. 2–3.  Twitter's registration thus constitutes "conclusive evidence of" Twitter's "exclusive right

5   to use" the mark TWITTER in connection with those services.

6      Because there is conclusive evidence of Twitter's right to use the mark in the manner in which

7   Twitter has used it, and in the manner Plaintiffs allege constitutes a violation of their rights, *see, e.g.*,

8   Compl. ¶¶ 19–20, the Trademark Claims should be dismissed.

9                    **2.    The Trademark Claims are untimely.**

10      The Lanham Act "contains no explicit statute of limitations."  *Jarrow Formulas, Inc. v. Nutrition*

11   *Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002).  In the Ninth Circuit, courts look to the limitations period

12   for the analogous state-law cause of action.  *Id.*  "[I]f a [federal trademark] claim is filed within the

13   analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is

14   filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit."

15   *Id.* at 837.  The analogous state limitations period for trademark claims is four years, and that period is

16   applicable both to Plaintiffs' federal Lanham Act claims and their trademark infringement under

17   California common law.  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).[6]  "[I]n

18   determining the presumption for laches, the limitations period runs from the time the plaintiff knew or

19   should have known about his [trademark] cause of action."  *Jarrow Formulas*, 304 F.3d at 838.

20      Plaintiffs knew about their cause of action more than four years before they filed suit on January

21   16, 2018.  Plaintiffs allege that there was a likelihood of confusion between the TWiT and TWITTER

22   marks in March 2007—11 years ago.  Compl. ¶¶ 13–14.  Indeed, at that time, Laporte went so far as to

23   express his belief *that the likelihood of confusion implicated his legal rights*.  *See* Gratz. Decl. Ex. B.

24   Later, in June 2009—still five years outside the statute of limitations—Laporte contended that Twitter's

25   use of its mark could result in confusion.  *See* Compl. Ex. B.  And that summer, Laporte and TWiT filed

26

27   ─────────────────────
     [6] Some courts have held that the analogous statute of limitations in California is actually two years, not
28   four.  *High Country Linens, Inc. v. Block*, No. C 01-02180 CRB, 2002 WL 1998272, at *2 n.1 (N.D. Cal.
     Aug. 20, 2002).  Whether the period is two years or four, it had long since passed when Plaintiffs filed
     their Complaint.  Twitter uses the four-year period for purposes of this motion only.

1    a trademark infringement complaint against "twitvid," demonstrating their awareness of the legal bases

2    of a potential trademark claim, their asserted trademark rights, and the facts giving rise to such a potential

3    claim.  *See* Complaint, *TWiT, LLC et al v. Eatline, Inc.*, 5:09-CV-03411 (N.D. Cal. July 24, 2009), ECF

4    No. 1, RJN Ex. 4.  Indeed, Plaintiffs' lawsuit against "twitvid"—a third-party service for uploading

5    videos for use in Tweets—shows that they knew in 2009 about Twitter's features for including audio and

6    video content in Tweets in the form of links.  And, as discussed above, Laporte himself used Twitter's

7    Vine video-uploading feature in 2013, and cannot claim that he lacked knowledge of the feature he used

8    on camera on his talk show more than four years before the filing of the Complaint.  Gratz Decl. Ex. E.

9         Accordingly, because the four-year limitations period has run, there is a rebuttable presumption

10   that laches is applicable and Plaintiffs' Trademark Claims are barred in their entirety.  Plaintiffs have

11   pleaded no facts which would, if true, rebut that presumption.  Accordingly, all of the Trademark Claims

12   should be dismissed.

13        **E.      Dismissal Should Be With Prejudice, Since Amendment Would Be Futile.**

14        Twitter requests that the case be dismissed with prejudice, without leave to amend.  When

15   granting a motion to dismiss, "a district court may dismiss without leave where a plaintiff's proposed

16   amendments would fail to cure the pleading deficiencies and amendment would be futile."  *Cervantes v.*

17   *Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (upholding dismissal of a complaint

18   and the denial of leave to amend).  Here, there is no way to cure the pleading deficiencies.  Plaintiffs

19   have already tried to apply every conceivable available legal theory on these facts, and none fit.  The

20   judicially noticeable facts presented in this motion also show that Plaintiffs can plead no facts to save any

21   claim, either to state a plausible claim for relief on the merits or to avoid a meritorious statute of

22   limitations defense.  The Court may therefore appropriately deny any request for leave to amend.  *See id.*

23   **V.      CONCLUSION**

24        Plaintiffs' claims fall apart under scrutiny, and no amount of alternative and inconsistent pleading

25   can rescue the allegations.  Each and every claim is also untimely, and the Trademark Claims founder on

26   the conclusive presumption that Twitter has the right to use its mark.  Twitter requests that the Court

27   dismiss the Complaint in its entirety, with prejudice.

28

Dated:  March 20, 2018                    DURIE TANGRI LLP


                                    By: _____ */s/ Joseph C. Gratz*_____
                                          JOSHUA H. LERNER
                                          JOSEPH C. GRATZ
                                          ERIC G. MESSINGER

                                    Attorneys for Defendant
                                    TWITTER, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2018 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Joseph C. Gratz*
JOSEPH C. GRATZ

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:18-CV-00341-JSC