Karin P. Beam, Esq. (Bar No. 112331)
SPAULDING, McCULLOUGH & TANSIL LLP
90 South E Street, Suite 200
Santa Rosa, CA  95404
Telephone: (707) 524-1900
E-Mail: Beam@smlaw.com

Robert W. Payne, Esq. (Bar No. 73901)
PAYNE IP LAW
111 N. Market Street, Suite 300
San Jose, CA  95113
Telephone: (408) 981-4293
E-Mail: payne@bobpayne.com

Attorneys for Plaintiff
TWiT, LLC and LEO LAPORTE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWiT, LLC, a Delaware limited liability company, LEO LAPORTE, <br><br>Plaintiffs,<br><br>vs.<br><br>TWITTER, INC., a Delaware corporation,<br><br>Defendants. | Case No.  18-cv-00341-JSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT TWITTER AND NON-PARTY DURIE TANGRI LLP'S OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY DURIE TANGRI LLP AND ITS ATTORNEYS AS COUNSEL FOR DEFENDANT**<br><br>Date: May 24, 2018<br>Time: 9:00 a.m.<br>Courtroom:  F, 15th Floor |

Without a doubt, it is understandable that defendant Twitter would seek to retain Durie Tangri ("DT") as its counsel in this litigation. DT enjoys a well-deserved reputation in intellectual property legal circles, and the relationship between Twitter and the firm is apparently longstanding. TWiT also readily acknowledges that this situation might be frustrating for its prior counsel, DT; it cannot be easy to face potential disqualification in this case based on an attorney-client relationship

1

with a comparably small company some years back. Nonetheless, whether or not DT represented Twitter in 21 prior matters, or whether its counsel only talked with TWiT personnel for 20 minutes, the firm should not have taken this case.

# I. LEGAL ARGUMENT

### A. The "Comparative Relationship" Test Does Not Exist.

Much of the Opposition filed by Twitter is premised on the breadth of DT's relationship with TWiT as contrasted to work done by the firm for Twitter. The comparison, of course, is not relevant. As addressed in the moving papers, a disqualification inquiry is not dependent on the amount of time involved in a representation. Attorneys acquire fiduciary obligations of loyalty and confidentiality when attorney-client discussions proceed beyond initial or peripheral contacts. *Beery v. State Bar*, 43 Cal.3d 802, 812 (1987). "Even the briefest conversation between a lawyer and a client can result in the disclosure of confidences." *Novo Terapeutisk, etc. v. Baxter Travenol Lab.*, 607 F.2d 186, 195 (7th Cir. 1979).

DT also points to the passage of time between the TWiT representation and the case at hand to enable the successive representation at issue. But that analysis also is irrelevant. In *Brand v. 20th Century Ins. Co./21st Century Ins. Co.*, 124 Cal.App.4th 594, 607 (2004), neither the attorney's inability to recall confidential information nor the fact that 12 years had gone by since the former representation could overcome the disqualification analysis.

DT does not deny the existence of an attorney-client relationship with TWiT. Given that relationship, it matters not whether DT's counsel had one conversation with TWiT personnel several years ago or one hundred meetings yesterday. The effort to compare a longstanding relationship with one shorter-lived is not on point.

### B. Confidential Information Relevant to The Case is Undisputed, Admitted.

In the only Declaration offered to refute the nature and extent of the TWiT representation, DT partner Daralyn Durie ("Durie") proffers her version of services provided by DT to TWiT. But she does not respond to the detailed evidence submitted by TWiT regarding discussions she and her colleague had with Lisa Laporte, Leo Laporte, and attorney Warren Dranit. Those discussions are, in large part, the focus of this Motion, and the information conveyed by TWiT to DT during those

2

discussions has not been denied. No evidence has been presented by DT to rebut the nature and quantity of material, confidential information provided to it by their client.

Nor does DT refute the receipt of substantial <u>written</u> confidential material during its representation of TWiT. Instead, it points to some of that material that "might have been available in the public record in 2013", and asserts that some of the information "could be forthcoming during discovery proceedings". In contrast to its assertion regarding the public nature of TWiT's data, however, a careful reading of the July 11, 2013 email used by DT to support its claim (Exhibit B to the Declaration of Durie), actually <u>confirms</u> that the confidential material received by DT is <u>not</u> available in the public record. TWiT's evidentiary submission is in accord. (Declaration of Lisa Laporte ("Laporte Decl.") ¶¶10, 11, 12.) The "public record" assertion made by Twitter is not supported by the evidence, in contrast to the position taken under oath on the subject by TWiT. That conflict in evidence must be resolved in favor of TWiT.

Moreover, even if some of the data provided to DT counsel might be made available during discovery in this case, the argument is neither relevant nor persuasive. In *Farris v. Fireman's Fund Ins. Co.*, 119 Cal.App.4th 671 (2004), the court dismissed a similar assertion. "We do not agree with the trial court that, because 'much of the information provided to a(n)... attorney ... will inevitably be the subject of discovery...,' there was no need to disqualify" counsel. *Farris, supra*, at 685. The *Farris* court confirmed that a client like Twitter, the "successive representation" client, may be entitled to discover information its attorney actually obtained during the prior representation, but it is not entitled to have, either <u>through discovery or through the mind and experience of their current counsel</u>, the confidential information that its counsel acquired as well. *Farris, supra*, at 685. In *William H. Raley Co. v. Superior Court*, 149 Cal.App.3d 1042, 1047 (1983), the court looked at the question from TWiT's perspective. Confidential information, it noted, includes information which will be, or "may appear to the person...(from whom the information was acquired) to be, useful" as the former attorney represents the current adverse party.

This case passes these tests with flying colors. As described in more detail in TWiT's moving papers, material and substantive confidential information that <u>would not</u> be discoverable herein, and that <u>appears to be useful to Twitter</u>, was acquired by DT. It cannot be used against

3

TWiT in the pending litigation, including to dovetail the discovery requests based on DT's knowledge of the information; its use cannot even appear to be possible.

### C. This Is Not A "Playbook" Representation Analysis.

In an effort to refute the conflict of interest caused by the confidential information provided to DT by TWiT, Twitter argues that the information DT possesses amounts simply to "playbook" revelations. But the disqualification request is not presented on that basis; this is not a "playbook" case.

The "playbook" cases described by Twitter involve large corporations or business enterprises applying uniform operational policies on a broad basis. Both *Farris, supra* and *Khani v. Ford Motor Co.*, 215 Cal.App.4th 916 (2013) dealt with those circumstances; the cases involved Ford Motor Company and Firemen's Insurance Fund, and policies applied to legal representation and other matters on a national scale. Businesses of that ilk disseminate corporate protocols to personnel at large within the broader organization. While some of the legal principles underlying a disqualification analysis are addressed in the *Farris* and *Kahni* cases, the underlying factual foundations are not akin to that at bench. Here, the executive team of TWiT is Lisa Laporte and Leo Laporte. That's it. A conference with them is a conference with the entire TWiT executive team, and every piece of information they confided to DT was straight from the horse's mouth. Lisa Laporte's Declaration made it clear; she is the CEO and Leo Laporte is the owner of the TWiT license. There are no "middle men or women"; information coming from either Leo Laporte or Lisa Laporte is the best and most confidential information TWiT has. They are on the front-line, wholly aware and responsible for the corporate philosophies and confidential data underlying the earlier matter and this litigation.

The *Farris* court, *supra*, made a similar and important point. It was likely, the court noted, that some of the witnesses in the current litigation would be persons who had worked closely with their original attorney during the previous representation. The fact that prior counsel would be cross-examining his former clients did not bode well for the successive representation effort. *Farris, supra*, 119 Cal.App.4th at 685. Here, as above, TWiT's "Persons Most Knowledgeable" for depositions are Lisa Laporte and Leo Laporte. They are the primary witnesses for TWiT in this

4

case- as DT knows, they are TWiT-, the only TWiT personnel who worked with DT in the prior matter. That fact cannot engender the integrity of the legal system to TWiT, and does not result in an appearance of propriety.

In *Khani, supra*, also cited by Twitter, the evidentiary foundation for disqualification submitted by Ford, the former client, did not establish that confidential information at issue would be material to the successive representation. The evidence Ford presented did not show that Ford had policies, practices, or procedures generally applicable to the issues in dispute when the attorney represented Ford, or that any policies, practices, or procedures continued in existence from the first to the second representations. Unlike the case at hand, too, Ford did not demonstrate that the same decision makers involved in the earlier case were involved in the second litigation. Ford's submission of "bare-bones evidence" did not establish that the previous representation exposed its former attorney to confidential information that would be material to his current representation. *Khani, supra*, 215 Cal.App.4th at 922. That is not the case at bench. Here, the evidentiary showing by TWiT was far from "bare-bones".

TWiT submitted extensive documents and detailed Declarations going right to the points Ford missed. The TWiT/DT relationship was not a playbook representation of a large corporate client and its policies. It involved, instead, a serious matter addressed by and between DT and TWiT's only decision makers, Lisa Laporte and Leo Laporte. The representation did not employ a generic application of policy or procedure; a detailed analysis of material confidential information directly affecting TWiT's business activities was accomplished. Without repeating the examples of specific confidential materials and information provided to DT, the undisputed evidence of discussions between and among DT, Lisa Laporte, Leo Laporte, and attorney Warren Dranit matter in this case. (Laporte Decl., ¶¶5-13; Declaration of Warren Dranit ("Dranit Decl."), ¶¶4-9.) If revealed to Twitter, or used by DT even unintentionally, the information would provide a distinct advantage to DT's current client at the expense of its former client TWiT.

In a further effort to defeat the impact of TWiT's confidential communications with DT, Twitter also argues that TWiT failed to advise the Court that this confidential information is still relevant today, and applicable to the pending litigation. Without question, this Motion and the

5

Memorandum of Points & Authorities in Reply to Defendant Twitter and Non-Party Durie Tangri LLP's Opposition to Plaintiffs' Motion to Disqualify, Case No. 18-Cv-00341-JSC

obvious concern on the part of Lisa Laporte, Leo Laporte, and attorney Warren Dranit tell that tale. Twitter and the Court were advised in the moving papers that information obtained by DT in confidence is still relevant; TWiT is here precisely because it is. (Laporte Decl., ¶¶12-13.) Attorney Dranit, independently involved in the earlier DT/TWiT representation and working with TWiT in this case, described confidential information imparted to DT that would provide Twitter an advantage in this case. (Dranit Decl., ¶9.) The evidence submitted by TWiT precludes Twitter's arguments based on "playbooks" and alleged irrelevance.

### D. The Substantial Relationship Issue Must Be Resolved In Favor Of TWiT.

Twitter argues that because DT's representation of TWiT did not involve contract or trademark issues, the conflict of interest prohibitions do not apply. Twitter also analyzes the specific work done by DT for TWiT based on Durie's characterization of that representation, where she opines that the confidential information given her firm has no bearing on the present case, and was essentially "fluff". But the Declarations submitted and the documents contained in DT's files belie that characterization. A focus on just one of those documents called out by Twitter itself is useful to illustrate the fallacy of Twitter's claims.

In determining whether there is a "substantial relationship" between the successive representations, a court should first analyze whether there was a direct relationship with the former client and whether the relationship touched on issues related to the present litigation. *Advanced Messaging Tech., Inc. v. EasyLink Services Int'l Corp.*, 913 F.Supp.2d 900, 907 (2012). The substantial relationship test requires evidence supporting a rational conclusion that "information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Khani, supra*, 215 Cal.App.4th at 921 (citations omitted) (emphasis added). In accord, in *Trone v. Smith*, 621 F.2d 994, 999 (1980), the court held that if there is a reasonable probability that confidences were disclosed which could be used against the client in a later representation, a substantial relationship between the two matters is presumed. In the TWiT representation by DT, the nature of the relationship, even as described by DT, would lead to *Trone*'s conclusion.

6

In *Farris, supra,* 119 Cal.App.4th 671, the evidence submitted by client number one (TWiT in this case), made a prima facie showing that the attorney's prior and current representations were substantially related. In response, just as Twitter argues, the attorney alleged that the work he did for his original client was limited to the specific facts and policy provisions implicated by the first case. But the Court of Appeal did not buy the argument. It held, instead, that a "substantial relationship" does not necessarily mean an exact match between the facts and issues involved in the two representations. Information is material "when it has some critical importance" to the present matter. *Farris, supra,* at 680. The attorney failed to materially dispute the evidence presented by the original client's moving papers.

That analysis is applicable here. Exhibit A to the Declaration of Durie is an email from Lisa Laporte sent to Durie shortly after the TWiT/DT representation began. It contains information that <u>any attorney involved in litigation would love to have obtained from the opposing party</u>. But that information <u>is not</u> information an opposing counsel would ever receive. It does not matter, in contrast to Twitter's argument, whether the confidential information came from a plaintiff or a defendant in litigation- the distinction is without a difference when the party revealing the information is now the opposition. The confidences provided in <u>that</u> email alone would certainly give Twitter an advantage in the pending litigation. Any attorney who mistakenly forwarded that email to opposing counsel would rue the day, and would be convinced that his opposition now possessed information that could and likely would color the case. Neither DT nor Twitter can plausibly argue that TWiT should rest comfortably knowing that Twitter is armed with this data. That is the test. The successive representation attempted here is improper.

Above and substantially beyond the email, the confidences disclosed by TWiT during discussions with DT counsel and via documentary materials compel a conclusion that protects TWiT from feeling vulnerable in the pending case. If TWiT had come to the DT offices and asked an attorney there to file a copyright application, or draft an employment contract, or review a lease, maybe this analysis would be different. But that was not the case. The prior representation involved litigation, and the "non-playbook" information conveyed to DT could come to roost in this case.

7

Memorandum of Points & Authorities in Reply to Defendant Twitter and Non-Party Durie Tangri LLP's Opposition to Plaintiffs' Motion to Disqualify, Case No. 18-Cv-00341-JSC

*Farris, supra*, again provides assistance, confirming that information acquired during the first representation will be "material" to the second if it is directly at issue in, <u>or</u> has some critical importance to, the second representation. *Farris, supra*, at 623, citing to *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal.App.4th 698, 712–713. *Farris* also takes note of Wolfram, *Former Client Conflicts* (1998) 10 Georgetown J. Legal Ethics 677, 733–735, which weighs in on the issue by concurring that when confidential information "will be directly in issue or of unusual value in the subsequent matter" it will be "independently relevant" in assessing a "substantial relationship". *Farris, supra*, at 680, citing to Wolfram, *supra*, at 724.

As described in the moving papers, the *Jessen* court identified categories of information that might be "material", relevant to a determination whether an attorney ought to be disqualified. *Jessen* held that successive representations can be deemed "substantially related" based on the identity of key decision makers, the litigation philosophy of a party, the organizational structure of the past client, the financial impact of pending claims, and others. *Jessen, supra*, at 713. Consequently, in contrast to Twitter's arguments, it does not matter whether the prior case sounded in patent or contract law. In addition to the analysis provided in the moving papers based on the specific subject matters of the two successive cases, information disclosed to DT by TWiT related to the *Jessen* "categories" is directly relevant to the pending litigation, whether based on real property, tort, family law, or tax matters.

### E. All Relevant Factors Weigh In Favor Of Disqualification.

Trial courts have the power to order disqualification of counsel when necessary for the furtherance of justice. California Code of Civil Procedure §128(a)(5); *Klemm v. Superior Court*, 75 Cal.App.3d 893, 901, fn. 4 (1977). A court faced with the issue must balance competing interests, and weigh the "combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse" against the fundamental principle that "fair resolution of disputes requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest". *Comden v. Superior Court*, 20 Cal.3d 906, 915 (1978); *Lyle v. Superior Court*, 122 Cal.App.3d 470, 481 (1981).

8

Memorandum of Points & Authorities in Reply to Defendant Twitter and Non-Party Durie Tangri LLP's Opposition to Plaintiffs' Motion to Disqualify, Case No. 18-Cv-00341-JSC

Twitter does not argue that the pending motion is brought for purposes of delay. Neither does Twitter claim that the disqualification issue is raised for "tactical abuse", or that it will be prejudiced by disqualification of DT. The case is in the preliminary stages of litigation; the pleadings are not yet at issue, no discovery has been done, and any financial impact on Twitter would be minimal should it seek new counsel. In contrast, TWiT has made the decision to expend funds in its effort to gain an even playing field in this case. Given the "David and Goliath" aspects of this litigation, the effort demonstrates how seriously TWiT views this successive representation, how vulnerable it believes itself to be should DT defend Twitter against it. This is personal, and hits close to home, as demonstrated by the evidence submitted in the moving papers.

Underlying the balancing of interests is the duty of client confidentiality, which involves public policies of "paramount importance". *In Re Jordan,* 12 Cal.3d 575 (1974). Few precepts are more firmly entrenched than the fiduciary nature of the attorney-client relationship, which must be of the highest character, mandating the "utmost loyalty". *Frazier v. Superior Court,* 97 Cal.App.4th 23, 35 (2002); *Yorn v. Superior Court for City and County of San Francisco,* 90 Cal.App.3d 669, 675 (1979). So fundamental is this duty that an attorney continues to owe it to a former client even when the relationship has ended; an attorney is "forever forbidden" from using against the former client any information acquired their relationship. *Zador Corp. v. Kwan,* 31 Cal.App.4th 1285, 1293 (1995); *Frazier, supra,* at 35; *Yorn, supra,* at 675. This ethical prohibition includes <u>potential as well as actual use</u> of the information. *Galbraith v. State Bar of California,* 218 Cal. 329, 332-333 (1933).

In *Wutchumna Water Co. v. Bailey,* 216 Cal. 564 (1932), the court assured all parties that the disqualification analysis is unrelated to the good faith of counsel involved. And TWiT does not question the integrity of DT or its counsel. But, the possibility that information obtained during its tenure with DT might have an influence, any influence, on the Twitter litigation should not taint these proceedings. TWiT should not have to view this case through a lens colored by such a concern, and the integrity of the judicial system has to be, and has to <u>appear to be</u>, sacrosanct.

9

Memorandum of Points & Authorities in Reply to Defendant Twitter and Non-Party Durie Tangri LLP's Opposition to Plaintiffs' Motion to Disqualify, Case No. 18-Cv-00341-JSC

## II. CONCLUSION

TWiT respectfully asks the Court to order Twitter's law firm, Durie Tangri LLP, and each of its associated counsel, disqualified from representing Twitter in this pending litigation.

Dated: May 10, 2018.                SPAULDING, McCULLOUGH & TANSIL, LLP


By:   */S/ Karin P. Beam*
      Karin P. Beam
      Attorneys for Plaintiffs TWiT, LLC and
      Leo Laporte

10

Memorandum of Points & Authorities in Reply to Defendant Twitter and Non-Party Durie Tangri LLP's Opposition to Plaintiffs' Motion to Disqualify, Case No. 18-Cv-00341-JSC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed with the Court and electronically served through the CM-ECF system which will send a notification of such filing to all counsel of record.

Dated: May 10, 2018.

Kelly L. Mays

11

Memorandum of Points & Authorities in Reply to Defendant Twitter and Non-Party Durie Tangri LLP's Opposition to Plaintiffs' Motion to Disqualify, Case No. 18-Cv-00341-JSC