United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TWIT, LLC, ET AL.,

Plaintiffs,

v.

TWITTER INC.,

Defendant.

Case No.18-cv-00341-JSC

**ORDER RE: PLAINTIFFS' MOTION TO DISQUALIFY DURIE TANGRI LLP**

Re: Dkt. No. 25

Plaintiffs TWiT, LLC and its founder Leo Laporte bring this civil action against Twitter, Inc. alleging breach of contract, tort, and other state law claims, as well as trademark infringement claims under the Lanham Act and common law. Plaintiffs' motion to disqualify Twitter's counsel Durie Tangri LLP is now pending before the Court.[1] Having considered the parties' briefs and having had the benefit of oral argument on May 24, 2018, the Court DENIES the motion to disqualify. Durie Tangri's prior representation of TWiT is not substantially related to its current representation of Twitter such that Durie Tangri was exposed to confidential information that would be material to its current representation.

**BACKGROUND**

Since 2005, TWiT has distributed audio and video content over the internet in the form of hosted programs covering a broad range of topics. (Complaint at ¶ 7.) These programs are distributed to the public by TWiT via downloading or streaming from the internet ("netcasts"). (*Id*. at ¶ 7.) In addition to streaming live content, the TWiT website retains archives of its shows dating back numerous years which are available for download. (*Id*. at ¶ 8.)

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 13.)

In February 2013, TWiT received a letter from PersonalAudio, a company which operates as a patent assertion entity. (Dkt. No. 24-10 at ¶ 4; Dkt. No. 35-9 at 5.[2]) The letter invited TWiT to consider whether it wanted to enter into a licensing relationship with PersonalAudio based on TWiT's use of technology related to a patent owned by PersonalAudio. (*Id.*)

TWiT's attorney, Warren Dranit, recommended that TWiT consult with the law firm Durie Tangri regarding the letter. (Dk. No. 24-10 at ¶ 5.) Mr. Dranit thus arranged for a meeting between himself, Leo Laporte, Lisa Laporte (TWiT's Chief Executive Officer), and Daralyn Durie and Alex Feerst of Durie Tangri. (*Id.* at ¶ 6.) During this meeting the parties discussed "TWiT, its operations and its operating history, its marketing and distribution analyses, its business organization, its principals and owners, its technology, its audio and video streaming processes and programing, its advertising and income information, its overall philosophy regarding the pursuit and/or avoidance of litigation, [] its financial ability to address the estimated costs of litigation," "as well as strategies for handling litigation and its expenses." (*Id.* at ¶ 7.) Following the meeting, Durie Tangri provided Lisa Laporte with a cost estimate for the initial strategic recommendation. (*Id.* at ¶ 8.) This was followed by a Fee Agreement which was signed by both Durie Tangri and TWiT. (*Id.* at ¶ 9; Dkt. No. 24-10 at ¶ 6.) The scope of representation was identified as: "to advise TWiT on its potential liability with respect to this patent and to represent TWiT in patent litigation brought by PersonalAudio, should PersonalAudio sue TWiT (the 'Engagement')." (*Id.*)

To help prepare for any potential litigation, Ms. Laporte sent Durie Tangri financial information illustrating TWiT's "gross and net sales, together with its advertising revenues for the years 2012 and 2013, as well as revenue projections through late 2016." (Dkt. No. 24-10 at ¶ 10; Dkt. No. 24-10 at 11-16.) Over the next few months, the Laportes spoke "frequently with both Durie and Feerst" and Durie advised Ms. Laporte throughout regarding ongoing settlement negotiations including "analyzing its demands and TWiT's financial posture." (*Id.* at ¶ 11.)

Around this same time, Durie Tangri worked with the Electronic Frontier Foundation

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

("EFF") who had filed an inter partes review proceeding with the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent & Trademark Office seeking to invalidate PersonalAudio's patent. (Dkt. No. 35-8 at ¶ 5.) Mr. Laporte discussed EEF's effort and TWiT's support for it in a podcast. (*Id.*)

Durie Tangri billed 23 hours to TWiT in 2013 and 2.5 hours in 2014 for a total of 25.5 hours. (Dkt. No. 24-10 at 18-22; Dkt. No. 35-8 at ¶ 6.) On June 25, 2015, Durie Tangri sent TWiT a letter confirming conclusion of its representation of TWiT. (Dkt. No. 35-8 at ¶ 16.)

Nearly three years later, Plaintiffs filed the underlying suit against Twitter alleging 12 claims for relief including: (1) breach of written contract; (2) breach of oral agreement; (3) breach of implied contract; (4) promissory estoppel; (5) false promise; (6) negligent misrepresentation; (7) intentional interference with prospective economic advantage; (8) intentional misrepresentation; (9) negligent interference with prospective economic advantage; (10) trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a); (11) unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and (12) common law trademark infringement. Twitter responded by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 17.) Less than three weeks later, Plaintiffs filed the underlying motion to disqualify Durie Tangri as Twitter's counsel. (Dkt. No. 25.) Both motions are fully briefed and came before the Court for hearing on May 24, 2018.

**DISCUSSION**

"[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999) (internal citation and quotation marks omitted). Whether to disqualify counsel is a decision vested in the discretion of the district court. *See Gas–A–Tron of Ariz. v. Union Oil Co. of Calif.*, 534 F.2d 1322, 1325 (9th Cir. 1976).

Every attorney before this Court must "comply with the standards of professional conduct required of the members of the State Bar of California." N.D. Cal. Civ. Local Rule 11–4(a)(1). The Court thus applies California law in this matter. *See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F.Supp.2d 914, 918 (N.D. Cal. 2003). "California courts have identified two separate categories in which actual or potential conflicts of interest arise in a counsel's representation of multiple clients." *M'Guinness v. Johnson*, 243 Cal. App. 4th 602, 613 (2015). First, simultaneous or concurrent representation of clients with opposing interests results in a conflict of interest in which "[t]he primary value at stake ... is the attorney's duty—and the client's legitimate expectation—of *loyalty*." *Id.* (internal citation and quotation marks omitted, emphasis in original). Second, successive representation of multiple clients may result in a conflict of interest if the former client demonstrates "a *substantial relationship* between the subjects of the antecedent and current representation." *Id*. at 614 (internal citation and quotation marks omitted, emphasis in original). With successive representation, "the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*." *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994) (emphasis in original).

**A. Durie Tangri's Successive Representation**

The issue is whether Durie Tangri's successive representation of clients with adverse interests mandates disqualification. California Rules of Professional Conduct Rule 3–310(E) provides that:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the ... former client where, by reason of the representation of the ... former client, the member has obtained confidential information material to the employment.

Cal. Rules of Prof'l Conduct 3–310(E). Rule 3–310 prevents a former attorney from representing an adverse party when the former attorney possesses confidential information adverse to the former client. *HF Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal.App.3d 1445, 1452 (1991). However, a party seeking disqualification need not prove actual possession of confidential information in order to disqualify the former attorney. Rather, "[w]here the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated,

access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is mandatory." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 706 (2003) (quoting *Flatt*, 9 Cal.4th at 283). If a substantial relationship exists, the disqualification extends vicariously to the entire firm. *Flatt*, 9 Cal. 4th at 283.

Plaintiffs have taken the unusual step of disclosing all of their communications with Durie Tangri in an attempt to demonstrate that the firm received confidential information that is material to its representation here while also maintaining that disqualification is warranted under the substantial relationship test. Neither argument is availing.

**1. The Substantial Relationship Test**

Successive representations are substantially related "when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen*, 111 Cal. App. 4th at 713. "If the former client can establish the existence of a substantial relationship between representations the courts will conclusively presume the attorney possesses confidential information adverse to the former client." *H. F. Ahmanson*, 229 Cal. App. 3d at 1452. "The conclusive presumption [] avoids the ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge and it makes clear the legal profession's intent to preserve the public's trust over its own self-interest." *Id*. at 1453.

"To create a conflict requiring disqualification, ... the information acquired during the first representation [must] be material to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation." *Farris v. Fireman's Fund Ins. Co*. 119 Cal.App.4th 671, 680 (2004). For purposes of this analysis, "it is not the services performed by the attorney that determines whether disqualification is required, it is the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation." *Id*. at 681 (internal citation and quotation marks omitted).

Durie Tangri's prior representation of Plaintiffs is not substantially related to its current representation of Twitter. The legal problem in the previous representation was a third party's ultimately unrealized threat to initiate patent litigation against TWiT. The legal problem in this case is trademark infringement/breach of contract that focuses on each party's marks and the services they offer to the public and the public's perception of those marks. Any confidential communications Durie Tangri would have had with Plaintiffs regarding the patent litigation threat would be immaterial to the issues in this case.

In *Farris v. Fireman's Fund Ins. Co*. 119 Cal.App.4th 671 (2004), for example, the court granted a motion to disqualify because the attorney at issue had worked as coverage counsel for an insurance company for 13 years and then sought to represent an insured challenging the denial of a request for defense. *Id*. at 679, 686. The court reasoned that the claims processing practices and procedures which the attorney helped shape while working at the insurance company would likely be at issue in the new action. *Id.* at 684-85. Given that the attorney's representation of the insurance company involved the same legal issues as in the successive action, and that senior claims personnel with whom the attorney had worked would likely be called as a witness, disqualification was required. *Id*. at 684-85. No similar overlapping issues are present here.

Similarly, in *Beltran v. Avon Prod., Inc*., 867 F. Supp. 2d 1068 (C.D. Cal. 2012), on which Plaintiffs heavily rely, the court concluded that disqualification was appropriate because the attorney in question had represented Avon in cases involving Avon's practice and method of testing its products and then sought to represent clients in a putative class action against Avon that also implicated "Avon's practice and method of testing its products."[3] *Id*. at 1080-82. The court concluded that through the attorney's "representation of Avon over the course of six years amounting to over 300 hours and costing Avon over $100,000, there [wa]s—at the very least—a 'reasonable possibility' that he acquired confidential information regarding Avon's business and

[3] Plaintiffs also rely on *Costello v. Buckley*, 245 Cal. App. 4th 748, 751 (2016), but the facts there are inapposite: disqualification was required because the attorney who represented the defendant (also his brother) in an action seeking to recover money loaned to the defendant during the course of a romantic relationship with the plaintiff had previously represented the plaintiff and learned confidential information regarding the plaintiff and defendant's romantic relationship during the course of that representation.

marketing practices, its litigation and settlement strategies, and its testing protocols that are not publicly available and, if imparted to Plaintiff, would confer a significant advantage to Plaintiff in this lawsuit." *Id*. at 1082. Here, in contrast, the legal and factual issues implicated in the prior representation are not implicated in this action.

In *Khani v. Ford Motor Co*., 215 Cal. App. 4th 916 (2013), the court held that the trial court abused its discretion by disqualifying an attorney who brought a California lemon law suit against Ford based on the attorney's previous representation of Ford in 150 cases including some California lemon law cases. *Id*. at 919, 922. The court concluded that there was no automatic disqualification just because the two actions involved the same statute; rather, the party seeking disqualification was required to show that confidential information regarding Ford's defense of these types of cases would be at issue in the second action, or that there were standard policies, practices, or procedures which would be applicable to both, or even that the same decision makers would be involved. *Id*. at 922. No such showing has been made or can be made here.

Plaintiffs' urging that the matters are substantially related because both involve audio and video streaming is unpersuasive. The first matter involved whether TWiT's audio and video streaming infringed a patent. The current action involves whether Twitter made an oral and written promise to stay out of the audio and video streaming market and whether Twitter infringes TWiT's mark. That TWiT utilizes video and audio streaming is a fact relevant to both matters (indeed, nearly any matter in which TWiT is a party), but TWiT's actual audio and video *technology* is not. In *Khani*, for example, that Ford's products were at issue in the previous and successive lemon law cases was insufficient to support disqualification. Similarly, in *Beltran*, that Avon's products were at issue in both lawsuits did not trigger disqualification; it was that the practice and method of testing those products was directly at issue in both lawsuits that required disqualification. There are no such overlapping issues in Durie Tangri's prior and current representations.

Plaintiffs nonetheless insist that because TWiT is essentially a two-person entity with the Laportes being the only decision makers, Durie Tangri necessarily has access to confidential information regarding how the Laportes think and operate, as well as an advantage to the extent to

which either of the Laportes would likely be witnesses in this action. But these circumstances are not enough to warrant disqualification unless the two representations are substantially related. If the law were otherwise, anytime an attorney represented a small company or individual the attorney would be forever barred from taking on a representation adverse to their former client, regardless of whether the initial and successive matters are related. There is, however, no "lifetime prohibition against representation adverse to a former client, treating the former client in the same fashion as a current client, or automatically mandating disqualification where the two compared matters are entirely unrelated." *Farris,* 119 Cal. App. 4th at 680. *Jessen* disavowed such a "bright line standard" holding that "the relevant legal principles are only generally stated and must be applied to individual cases by the exercise of the court's considered judgment based in reason, logic and common sense." *Jessen*, 111 Cal. App. 4th at 713. Unlike the attorneys who were disqualified in *Farris* and *Beltran*, Durie Tangri did not represent Plaintiffs in a matter where the legal and factual issues are the similar to those present here. Absent such a substantial relationship, there is no presumption that Durie Tangri's representation of Plaintiffs in the patent matter provided it with confidential information which would be material to the evaluation, prosecution, or settlement of this action.

**2. Material Confidential Information**

If the former client fails to demonstrate the successive representations are substantially related, "the moving party must prove the lawyer in fact obtained such information—i.e., 'some showing of the nature of the communications or a statement of how they relate to the current representation.'" *Robert E. Weil et al., Cal. Prac. Guide: Civ. Pro. Before Trial* (The Rutter Group 2017) ¶ 9:406.8a (quoting *Elliot v. McFarland Unified School Dist*. 165 Cal.App.3d 562, 570–572 (1985)). Plaintiffs identify several categories of allegedly material and confidential information received by Durie Tangri.

First, Plaintiffs contend that financial information Durie Tangri received in the prior representation is material to this action; however, Plaintiffs fail to explain how. In this action Plaintiffs allege that Twitter breached its contract with Plaintiffs in 2017 when it made "plans to expand its use of the TWITTER mark in connection with the streaming and downloading of video

content over the internet." (Complaint at ¶ 19.) There is no explanation as to why financial records from 2012 and 2013 as well as revenue projections through late 2016 would be directly at issue in this action.

Second, Plaintiffs insist that Durie Tangri's receipt of information regarding the history of TWiT's business organization satisfies the materiality requirement. However, "the attorney's acquisition during the first representation of general information about the first client's 'overall structure and practices' would not of itself require disqualification unless it were found to be 'material' –i.e., directly in issue or of critical importance–in the second representation." *See Farris*, 119 Cal.App.4th at 680; *see also Khani*, 215 Cal.App.4th at 921 (explaining that disclosure of information regarding a former client's key decision makers would not require disqualification unless the information is "directly in issue or of critical importance" in the current action). Such information is not directly at issue in this case any more than it would be in any litigation matter involving TWiT, and it is not of critical importance to this action.

Third, Plaintiffs maintain that the most important information that Durie Tangri actually received was information regarding TWiT's views about litigation as well as its financial viability to engage in and sustain litigation. But acquiring information about a former client's "litigation philosophy" does not warrant disqualification unless the information is directly in issue or of critical importance to the subsequent matter. *See Khani*, 215 Cal.App.4th at 921; *Farris*, 119 Cal. App. 4th at 680. Again, it is not directly at issue in this case. In *Farris*, in contrast, the court required disqualification based on counsel's "pervasive participation, and indeed his personal role in shaping, [the former client's] practices and procedures in handling California coverage claims, ractice and procedures that, given the short time span between [counsel's] departure from [his law firm] and [the plaintiff's] request for a defense from [the former client], were likely to have been in place when [the former client] rejected the tender and thus directly at issue in this case." 119 Cal.App.4th at 688. In such circumstances, counsel's acquisition of "playbook" information, including litigation philosophy, may assume added importance. *Id.* The circumstances here are not remotely close to those in *Farris*, or any other case cited by Plaintiffs.

At bottom, Plaintiffs are arguing that because they are a small business, *any* information

that Durie Tangri obtained from the prior representation is material to this action. But this is not the law. Successive representation is only barred "[i]f the subjects of the prior representation are such as to make it likely the attorney acquired confidential information that is *relevant and material* to the present representation." *City & Cty. of San Francisco v. Cobra Sols*., Inc., 38 Cal. 4th 839, 847 (2006) (internal citation and quotation marks omitted) (emphasis added).

Finally, at oral argument, Plaintiffs opined that the dispositive question is whether there was a "sense within the client that confidential information had been disclosed." Plaintiffs are incorrect. The Court's inquiry is not subjective; instead, the Court considers whether "the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen v. Hartford Casualty Ins. Co*., 111 Cal.App.4th 698, 713 (2003) (emphasis added).

The successive representation inquiry "focuses upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation." *Farris*, 119 Cal. App. 4th at 681 (internal citation and quotation marks omitted). Here, Plaintiffs have failed to demonstrate that they imparted confidences on Durie Tangri which could be used to an adverse effect in this litigation given that the prior representation and this action are not substantially related.

*******

"Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc*., 20 Cal. 4th 1135, 1145 (1999); *see also Cobra Sols*., 38 Cal. 4th at 846 ("When disqualification is sought because of an attorney's successive representation of clients with adverse interests, the trial court must balance the current client's right to the counsel of its choosing against the former client's right to ensure that its confidential information will not be divulged or used by its former counsel.") While the Court understands Plaintiffs' concerns regarding their former attorney's representation of Twitter

here, Plaintiffs have failed to demonstrate that there is a substantial relationship between the two representations such that the drastic remedy of disqualification is warranted.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion to Disqualify Durie Tangri is DENIED. This Order disposes of Docket No. 25.

**IT IS SO ORDERED.**

Dated: June 1, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California